**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., DOE 1, by DOE 1's next friend and parent, MARIE SCHAUB, who also sues on her own behalf, DOE 2, by Doe 2's next friend and parent DOE 3, who also sues on Doe 3's own behalf. | : : : : : : : : : : | Case 2:12-cv-01319-TFM |
| Plaintiffs, | : : | |
| vs. | : : | |
| NEW KENSINGTON-ARNOLD SCHOOL DISTRICT, | : : : : | |
| Defendant. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Plaintiffs Freedom From Religion Foundation, Inc. ("FFRF"), Marie Schaub, Doe 1, Doe 2, and Doe 3 by and through their attorneys, Marcus B. Schneider, Esquire and STEELE SCHNEIDER, file the following Memorandum of Law in Support of Plaintiffs' Motion for Protective Order.

**INTRODUCTION**

Through the filing of Plaintiffs' Motion for Protective Order and this Memorandum of Law in Support, Plaintiffs seek an Order of Court that restricts the Defendant's and its counsel's right to release or disclose Plaintiffs' identifying information. Plaintiffs have previously requested and this Honorable Court has previously granted Plaintiffs the right to proceed in this case under pseudonyms. Plaintiffs file their Motion for Protective Order to ensure that, consistent with this prior ruling, their identities are kept confidential and that their pseudonymous status is

not compromised by the widespread release of identifying information by Defendant or Defendant's counsel.

Plaintiffs file this Motion for Protective Order only after the parties have attempted and failed to agree upon the level of restrictions necessary to provide adequate protection to Plaintiffs. Based upon the disagreement between the parties as to the protections necessary to ensure this protection, Plaintiffs propose that the release of identifying information be limited as detailed herein and as set forth in the attached Proposed Protective Order.

Plaintiffs' Proposed Protective Order will sufficiently limit and restrict the Defendant's handling of identifying information to protect the Plaintiffs from exposure to harm, while still allowing Defendant the opportunity to conduct all necessary and relevant discovery. Conversely, the wide-ranging disclosure envisioned by Defendant's counsel would create an unnecessarily high risk of the Plaintiffs' identities becoming known to the public. Such disclosure would likely result in Plaintiffs being exposed to the types of harm recognized by the Court in its Memorandum Opinion on Plaintiffs' Motion for Leave to Proceed Using Pseudonyms and would effectively undo the relief granted by the Court on that issue.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this case on September 14, 2012. Prior to the filing of a responsive pleading by Defendant, Plaintiffs filed their Motion for Leave to Proceed Using Pseudonyms and for Protective Order and Brief in Support thereof (hereinafter "Pseudonyms Motion") on November 21, 2012. The Court granted Plaintiff's request to use pseudonyms but denied the proposed Protective Order, requesting that the parties attempt to resolve any disputes as to the language of the protective order before resubmitting the proposed order to the Court as a consented motion.

The parties endeavored to agree upon the language of a protective order relating to identifying information of the Plaintiffs Doe 1, Doe 2, and Doe 3 (hereinafter the "Doe Plaintiffs") but could not do so. *See* Exhibit 1. Following the Court's denial of Defendant's Motion to Dismiss, on February 22, 2013, counsel for the parties met before the Court at the Federal Rule of Civil Procedure 16 conference with the Court. After informing the Court that the parties could not reach agreement on the language of a protective order, the Court ordered that each party file its proposed protective order with the Court. Plaintiffs' Proposed Protective Order is attached to their Motion for Protective Order and is reviewed below.

### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(c), protective orders are generally available to parties or persons from whom discovery is sought. Fed. R. Civ. P. 26(c). Although the scope of the Plaintiffs' Proposed Protective Order would extend beyond discovery and cover all forms of disclosures by Defendant, the Defendant has seemingly conceded that identifying information should be protected and kept confidential for all matters other than Defendant's ability to conduct discovery.[1] Even if Defendant does propose a protective order that would permit it to disclose identifying information for reasons other than conducting discovery, Rule 26(c) and Rule 26(b)(2)(C) are instructive on how Plaintiffs' Motion should be considered by the Court.

---

[1] Throughout the correspondence between Plaintiffs' and Defendant's counsel leading up to the filing of this Motion for Protective Order (Exhibit 1), Defendant has opposed the Proposed Protective Order only on the basis that it would interfere with Defendant's ability to conduct adequate discovery. Defendant has not argued that it should be permitted to publicly disclose identifying information of the Doe Plaintiffs for reasons other than discovery, and Plaintiffs do not anticipate that Defendant will suggest that it should be permitted to do so given the fact that such latitude would effectively defeat the Court's prior granting of Plaintiff's Pseudonym Motion. For this reason, the Court should consider the protective order framework created by Rule 26(c) when analyzing Plaintiffs' Motion for Protective Order.

3

Rule 26(c) requires the party seeking a protective order to bear the burden of persuasion in order to obtain the requested protective order. *Cipollone v. Liggett*, 785 F.2d 1108, 1121 (3d Cir. 1986). In doing so, a moving party "must show good cause by demonstrating a particular need for protection." *Id.* While the need for protection must be based upon more than "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning[,]" in the discovery context, a moving party need *not* demonstrate to the court in the first instance that each item sought to be covered by a protective order ought to be protected. *Id.* at 1122. With this in mind, courts reviewing motions for protective orders may often find it advantageous to "construct a broad umbrella protective order upon a threshold showing by the . . . movant . . . of good cause." *Id.* (internal quotations omitted). Under such an approach, in the document discovery context, "the umbrella order would initially protect all documents that the producing party designated in good faith as confidential." *Id.*

A party's ability to conduct discovery in general is limited by a principle of proportionality set forth in Federal Rule of Civil Procedure 26(b)(2)(C). *Bowers v. National Collegiate Athletic Ass'n*, 2008 WL 1757929 at *4-5 (Feb. 27, 2008); *See also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (stating that a party's right to discovery is "not unlimited and may be circumscribed"). Pursuant to Rule 26(b)(2)(C), a court "should 'limit the frequency or extent of discovery' where the proposed discovery is unreasonably duplicative, where the discovering party has already had an ample opportunity to obtain the information in question, or where the burden of the discovery would outweigh its likely benefit." *Bowers*, 2008 WL 1757929 at *4 (citing F.R. Civ. P. 26(b)(2)(C)). The rule of proportionality "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of

inquiry." *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting F.R. Civ. P. 26 advisory committee note).

## ARGUMENT

Plaintiffs seek a protective order restricting the Defendant's rights to release identifying information of the Doe Plaintiffs. Plaintiffs seek this relief in order to insulate the Doe Plaintiffs from the type of harm and retribution discussed by Plaintiffs in their Pseudonyms Motion and recognized by the Court in its Memorandum Opinion and Order (Doc No. 19) (hereinafter the "Memorandum Opinion") dealing with the motion. *See* Pseudonyms Motion at 3-5; Memorandum Opinion at 5-6.

The Plaintiffs' Proposed Protective Order is substantially similar to the protective order originally proposed as part of the Plaintiffs' Pseudonyms Motion, which the Plaintiffs had drafted based upon reference to the content of protective orders adopted by other District Courts in pseudonymous Establishment Clause cases. In the Proposed Protective Order, the Plaintiffs seek to limit Defendant's and Defendant's counsel's release of any identifying information to a single release of such information to a selected guidance counselor of the Valley High School. The Proposed Protective Order further restricts that this disclosure be made for the specific purpose of allowing the guidance counselor to verify the student Plaintiffs' enrollment in the District. Plaintiffs have also introduced a modifiability clause to the Proposed Protective Order, which allows the Defendant to request permission to release identifying information to other District employees should any *specific* discovery issues arise which require such release. These terms and the reasons supporting their inclusion are discussed more fully below.

I.       **The Proposed Protective Order is Necessary to Protect Plaintiffs Doe 1, Doe 2, and Doe 3.**

Establishment Clause plaintiffs have routinely been subjected to harassment and threats. *See* Memorandum Opinion at 5-6. The concern for harassment of and retribution against Establishment Clause plaintiffs is particularly heightened when minors are involved in these highly contentious cases involving religion, such as this case. *See Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

In deciding that the Doe Plaintiffs may proceed using pseudonyms, the Court, in its Memorandum Opinion, found that community members in this case have expressed threats of violence and ostracism. *See* Memorandum Opinion at 5. The Court stated

> The Court finds that this basis upon which the Does fear disclosure is substantial and that there is a substantial public interest in ensuring that litigants not face such retribution in their attempt to seek redress for what they view as a Constitutional violation, a pure legal issue.

Memorandum Opinion at 5-6.

For primarily the same reasons that the Court found that the Doe Plaintiffs in this case should be permitted to proceed pseudonymously, the Plaintiffs also meet their burden under Rule 26(c) required for the adoption of a protective order. Under the test provided by *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997) and *Doe v. Melgess*, 654 F.3d 404, 408 (3d Cir. 2011), in order to obtain the protections of pseudonymous litigation, moving plaintiffs must demonstrate a fear of severe harm and that the fear of severe harm is reasonable. Satisfaction of this requirement would naturally satisfy the requirement under Rule 26(c) that, in order to obtain a protective order, a party must show "good cause by demonstrating a particular need for protection." *See Cipollone*, 785 F.2d at 1121. Based upon the Court's prior finding that Plaintiffs have a reasonable fear of severe harm, the good cause supporting the need for

protective order protection has already been established. *See* Pseudonyms Motion (Doc. No. 12) and Memorandum Opinion (Doc. No. 19). As such, the focus in this motion should be on the type of protective order necessary to adequately protect the Doe Plaintiffs.

Limiting the disclosure of identifying information to only necessary individuals is an appropriate and effective way to protect the plaintiffs. Similar protective orders have been utilized in other Establishment Clause cases. In *Doe v. Porter,* a case involving a challenge to religious instruction in a Tennessee school district, the U.S District Court for the Eastern District of Tennessee entered a protective order that said the following:

> The true names and identities of the plaintiffs shall be disclosed to counsel of record for the defendants. The plaintiffs' true names *shall not be further disclosed to any other person except as necessary to ascertain the residency status, taxpayer status, and school enrollment status of the plaintiffs*, and such disclosure beyond counsel for the defendants shall be *strictly limited to those instances where it is absolutely necessary to ascertain said items of information*. Each and every person to whom the true names of the plaintiffs is disclosed shall immediately and contemporaneous therewith be informed by the defendants' counsel that, under penalty of civil contempt of this order, those persons shall not make any further disclosure of the plaintiffs' true names and identities.

Memorandum and Order at 4, *Doe v. Porter,* No. 1:01-cv-115 (E.D. Tenn. Oct. 23, 2001) (emphasis added) (attached as Exhibit 2).

Federal courts have issued protective orders severely limiting the disclosure of identifying information in other challenges to religious displays on public school property. In a case challenging a Ten Commandments posting in school, *Doe 1 v. School Board of Giles County,* the court granted a protective order that said in part:

> Defendant's attorneys shall be permitted to disclose Plaintiffs' names and contact information to Dr. Terry Arbogast, Superintendent of Giles County Public Schools, and to Jeff Young, Network Administrator for Giles County Public Schools as the agreed upon designated representatives for Defendant. Dr. Arbogast and Mr. Young shall review and be subject to the terms of this Order and shall acknowledge in writing their receipt of a copy of this Order

> and their agreement to be bound by its terms. Dr. Arbogast and Mr. Young shall not disclose to any other person or discuss with any other person, other than Defendant's attorneys and support staff, the names or other identifying information regarding Plaintiffs.

Order Granting Mot. to Proceed Using Pseudonyms and for Protective Order at ¶ 7, No. 7:11-cv-00435 (W.D. Va. Dec. 12, 2011) (Attached as Exhibit 3). Recognizing the importance of protecting the family challenging the Ten Commandments display, the court said, "The Court further instructs that no harassment, threats, intimidation or interference with the Plaintiffs will be tolerated and violators will be subject to contempt proceedings." *Id* at ¶ 9.

In a recent challenge to a Jesus painting displayed in an Ohio school, the magistrate judge promptly entered an order directing that the plaintiffs' identities could not be disclosed to persons other than the defendant's attorneys and legal support staff. Order, No. 2:13-cv-112 (S.D. Ohio Feb. 8, 2013) (Attached as Exhibit 4).

In this case, an order strictly limiting the disclosure of identifying information to a single District employee for purposes of "ascertaining the residency status, taxpayer status, and school enrollment status of the Doe Plaintiffs" will serve to shield the Doe Plaintiffs from staff maltreatment and from the risk that the Doe Plaintiffs' identities become widely known by District staff, the public, or the local community. Specifically limiting this disclosure to a guidance counselor will keep the identifying information out of the hands of District employees who are in a position to take reprisals against the student Plaintiffs, such as administrators and teachers.

Counsel for the Defendant has indicated the Doe Plaintiffs' identities would need to be disclosed to "many members of the school community." Exhibit 1 at 6. Such broad disclosure would place both Doe 1 and Doe 2 in the untenable position of having their teachers, administrators, and other school staff know that they challenged the school on a contentious

issue involving religion. Doe 1 and Doe 2 are current District students and will presumably

continue in the school system through their graduation at Valley High School. The Doe Plaintiffs

are concerned that they may be treated differently than other students and that their identities

may be leaked publicly if former and current school employees are told of their identities. Were

their identities to be leaked publicly, irreparable damage would be done, and that bell could not

be unrung.

In other cases, school staff have used their school position to express their disdain for

litigants in Establishment Clause challenges. The principal of the high school that Ellery

Schempp attended sought to have his admission to Tufts University rescinded. Robert S. Alley,

*Without a Prayer: Religious Expression in Public Schools.* Pg. 9 (1996); *see generally Sch. Dist.*

*of Abington Twp., Pa. v. Schempp,* 374 U.S. 203 (1963). In an Oklahoma school, thirteen-year

old Nicole Smalkowski was accused of stealing and kicked off of the school basketball team

after objecting to team prayers. Carolina Mala Corbin, *Nonbelievers and Government Speech*, 97

Iowa L. Rev. 347, 371 (2012). Teachers reportedly told the student that, "this is a Christian

country and if you don[']t like it you can get out." *Id.* In *Doe 1 v. School Board of Giles County,*

a school teacher of the district contacted FFRF to say, "You folks are allowing Satin (sic) to rule

you!!" Decl. Elliott, No. 7:11-cv-00435 (W.D. Va. Sept. 13, 2011) (Attached as Exhibits 5 and

5A).

The District here has already made it known that school administrators and staff are

hostile to the position of the Plaintiffs. Robert Pallone, the President of Defendant's Board of

Directors, wrote to community members on Facebook last March, saying in part, "*Our*

*community, the administration, the board and our staff* are outraged by the request to remove a

monument that has been part of our district and community for decades. We WILL NOT remove

9

this monument without a fight !!!!!" (Compl, ¶ 21) (emphasis added). The student Plaintiffs in this suit should not be exposed to any hostile staff and administrators who are angered by the families' filing of a civil rights lawsuit.

The Doe Plaintiffs will continue to come into contact with any number of school staff who handle important school decisions on grades, athletic teams, discipline, letters of recommendation and numerous other decisions made concerning students under their charge. The Doe Plaintiffs need to be protected from any potential disparate treatment from staff. Restricting the disclosure of identifying information as outlined in Plaintiffs' Proposed Protective Order will accomplish this goal.

## II.      Limiting Disclosure of Identifying Information Will Not Prejudice the Defendant

Defendant has taken the position that disclosure of identifying information will need to be much broader than what is provided for by Plaintiffs' Proposed Protective Order. Defendant has argued that widespread release of identifying information to current *and former* District staff will be necessary in order for Defendant's counsel to conduct the discovery necessary to adequately defend the District in this case. When pressed, however, Defendant has not been able to articulate any specific reasons why such widespread release of identifying information or such far-reaching discovery would be necessary. Exhibit 1 at p. 6. The most that Defendant has been able to do is to suggest that the Defendant should have the right to investigate and challenge each of the averments in the Complaint. *Id.* In advancing this position, Defendant included as the factual averments that it would need to investigate with members of the school community that Doe 2 enters school each day, that Doe 1 is exposed to the monument when visiting the school, that Doe 1 will attend the high school in 2014, that Ms. Schaub and Doe 3 view the monument while attending necessary business at school, that Ms. Schaub views the monument as

commanding and feels excluded, that Ms. Schaub and Doe 1 have suffered from stress due to the existence of the monument, that Ms. Schaub has lost sleep over the presence of the monument, that Doe 2 and Doe 3 identify as non-religious, that Plaintiffs are offended by the monument, that Plaintiffs perceive the display of the monument as an endorsement of religion, that the monument makes the Plaintiffs feel like outsiders, that the monument makes the Plaintiffs feel pressured to adopt the District's alleged favored religious views, and that the presence of the monument usurps the parent Plaintiffs' religious or non-religious upbringing of their children. *Id.*

Plaintiffs have taken the position that, first and foremost, inquiry on many of these issues is irrelevant or immaterial to the outcome of the case, and, second, that the vast majority, if not all, of these issues can be addressed by the Plaintiffs themselves by way of responses to interrogatories or depositions.

This case fundamentally concerns the District and its actions relating to a Ten Commandments monument. The *identities* of the plaintiffs have little to no bearing on the ultimate merits of the case. In *Doe v. Barrow County, Ga.,* the Northern District Court of Georgia found that pseudonyms were necessary and held

> Plaintiff will, however, have to make himself known to the court and counsel for the defense. Any proceedings necessary to determine standing, or other issues defendants wish to pursue with the plaintiff, will be conducted in a closed setting. The court notes that the inconvenience to defendants should be relatively low. **This is not a case that will be determined by plaintiff's credibility or recitation of facts. Rather, as long as plaintiff has standing to sue, this case will depend on the resolution of a legal question: Does the display of the Ten Commandments in the county courthouse violate the Constitution?** The relevant facts, including who placed the display, what is included in the display, how long it has been presented, etc., will likely come from witnesses other than the plaintiff. The legal issues, while possibly the subject of expert testimony, will be determined by the arguments of counsel. At the end of the day, plaintiff plays a relatively minor role in this litigation, and the constitutionality of the Ten Commandments display will be determined in proceedings open and accessible to

11

all. In light of the response these issues have generated from some in the community, the court feels it appropriate to allow plaintiff to proceed under a pseudonym.

219 F.R.D. 189, 194 (N.D. Ga. 2003) (emphasis added).

In another Ten Commandments case that proceeded with pseudonyms, the district court noted, "The anonymity of the plaintiffs will not adversely affect the defendants. The plaintiffs seek only an injunction, not individual damages." *Doe v. Harlan County Sch. Dist.,* 96 F. Supp. 2d 667, 671 (E.D. Ky. 2000). Like the *Harlan County* case, the Plaintiffs here have not sought compensatory damages; they seek an injunction, equitable relief, and nominal damages.

Based upon the factual issues that will be determinative in this case, the disclosure of the Doe Plaintiffs' identities to school staff, other than to confirm enrollment, is unnecessary. While the Plaintiffs will need to demonstrate standing, it is sufficient for standing purposes that the Plaintiffs have had direct unwelcome contact with the offending display. *See Baker v. Adams County/Ohio Valley Sch. Bd.,* 86 F. App'x 104, 109 (6th Cir. 2004) (finding that allegation of unwelcome personal contact with Ten Commandments monument display on public school property was sufficient for standing purposes).

There is no need for the Defendant to disclose the plaintiffs' identities to "many" school staff. It is highly unlikely that individual school staff members would be able to provide any testimony relating to the averments from the Complaint that Defendant claims to be interested in investigating. For instance, the monument at Valley High School sits in front of the school near two footbridges. The Plaintiffs are in the same position as that of any student or visitor to the school who utilizes the main entrance and comes into contact with the Ten Commandments monument. Speaking to a wide range of District personnel in an effort to locate one staff member who has seen a specific student Plaintiff enter the building through the main entrance is unlikely to lead to relevant evidence and is ultimately unnecessary. Similarly, the chances of District

personnel being able to contribute meaningful testimony about whether a particular student seemed stressed by the presence of the Ten Commandments monument are remote.

This broad sweeping discovery tack that Defendant seems interested in pursuing is especially inappropriate and objectionable in light of the proportionality requirements of Rule 26(b)(2)(C). The rule of proportionality is meant to guard against disproportionate discovery in situations where the burden or risk of harm to one party from whom discovery is sought outweighs the likely existence or utility of the discovery that is sought. In this case, a unique burden or potential harm exists. Each time that the Defendant shares the identifying information of the Doe Plaintiffs with anyone, be it a member of the District staff or any other third party, the risk that Plaintiffs' identities will become known increases. With this potential harm in mind, the possible utility of the discovery that Defendant is seeking to conduct must be closely analyzed.

Because of the nature of this case, facts relating to the Plaintiffs (beyond those facts which confer standing upon the Plaintiffs, which can be confirmed by disclosure to only one individual capable of verifying enrollment) are largely irrelevant -- the Doe Plaintiffs are in the same position as other students or visitors of the school who come into contact with the monument when utilizing the main entrance to the school building, and the Doe Plaintiffs are not seeking compensatory damages. In light of the balancing approach envisioned by Rule 26(b)(2)(C) and due to the sensitive nature of the Doe Plaintiffs' identifying information and the risk of harm facing Plaintiffs if their identities become known, any discovery that Defendant wishes to conduct that would require disclosure of identifying information must be highly likely to lead to essential, relevant evidence for the Defendant's interest in conducting the discovery to trump the Doe Plaintiffs' interest in protecting their anonymity.

Thus far, Defendant has been unable to articulate what material evidence it will be deprived of if the Court adopts Plaintiffs' Proposed Protective Order. Without articulating the specific disclosures necessary to investigate specific areas of relevant inquiry, the Doe Plaintiffs' interests in protecting their continued anonymity outweigh the Defendants' unsupported interest in making broad disclosure of identifying information. Plaintiffs recognize that, as discovery unfolds, Defendant may develop what it believes are specific, articulable reasons supporting additional disclosures of identifying information, but without having articulated any such specific need at this time, the adoption of an "umbrella" variety protective order is appropriate to ensure protection of the Plaintiffs' anonymous status. Any reasons for additional disclosure that Defendant may attempt to invent at this time are likely premature since the discovery that can be conducted within the framework of the Proposed Protective Order -- for example, interrogatories submitted to Plaintiffs or depositions of Plaintiffs -- may resolve the need for additional disclosures. Pursuant to the Proposed Protective Order, if the Defendant is able to articulate a specific and necessary area of inquiry that requires the disclosure of identifying information, it would be permitted to first raise this issue with the Plaintiffs and eventually seek relief from the Court if the parties cannot agree upon the release of identifying information.

In proposing this umbrella approach, Plaintiffs are mindful of the limited judicial resources available to dedicate to heavy involvement in discovery issues. Because the determinative issue of whether the Ten Commandments monument violates the Constitution will ultimately be determined on the basis of evidence that does not relate specifically to the identities of the Doe Plaintiffs, Plaintiffs do not anticipate that the Court will be burdened with a multitude of requests by Defendant to intervene in the discovery process. Although the Defendant's likely alternative approach -- an inverse umbrella approach where broad disclosure is permitted before

support for the need to disclose has been given -- may advertise finality, this approach has a substantial likelihood of depriving Plaintiffs of the protection that this Honorable Court previously provided them by granting the Plaintiffs' Pseudonyms Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Motion For Protective Order be granted and the Proposed Protective Order be adopted by the Court.

Respectfully submitted,

/s/ Marcus B. Schneider
Marcus B. Schneider, Esquire
PA I.D. No.208421
STEELE SCHNEIDER
428 Forbes Avenue, Suite 900
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
mschneider@steeleschneider.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2013, the foregoing **PLAINTIFFS'**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

was filed electronically.  Notice of this filing will be sent to all parties by operation of the

Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E)

of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF

system.

*/s/ Marcus B. Schneider, Esquire*
Marcus B. Schneider, Esquire

16