## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREEDOM FROM RELIGION : 
FOUNDATION, INC., DOE 1, by DOE :        Case 2:12-cv-01319-TFM
1's next friend and parent, MARIE :
SCHAUB, who also sues on her own :
behalf, DOE 2, by Doe 2's next friend and :
parent DOE 3, who also sues on Doe 3's :
own behalf. :
 :
                Plaintiffs, :
        vs. :
 :
NEW KENSINGTON-ARNOLD :
SCHOOL DISTRICT, :
 :
                Defendant. :

### DEFENDANT'S RESPONSE TO PLAINTIFFS' CONCISE STATEMENT OF MATERIAL FACTS

**The Origins of the Ten Commandments Monument**

1.      In late 1956, the New Kensington Fraternal Order of Eagles, Aerie 533, offered a stone monument inscribed with the Ten Commandments to the New Kensington School District Authority (hereinafter the "Ten Commandments Monument"). (Pl. Ex. A, Defendant's Response to Plaintiff's First Set of Interrogs., 2-3; Pl. Ex. B, Dec. 3, 1956 Minutes of New Kensington School Board meeting, NewKen-Arnold 00222-00223).

DEFENDANT'S RESPONSE:  Admitted.

2.      The New Kensington School District Authority accepted the Ten Commandments Monument by letter dated December 4, 1956. (Pl. Ex. A, 3; Pl. Ex. C, Dec. 17, 1956 minutes of meeting of New Kensington School District Authority, NewKen-Arnold 00213-00214).

DEFENDANT'S RESPONSE: Admitted.

1

3.     The Ten Commandments Monument, which still stands today in its original location, is 6 feet tall and weighs approximately 2,000 pounds. (Pl. Ex. A, 3; Pl. Ex. D, Daily Dispatch Sept. 19, 1957 news article, New-Ken Arnold 00145-00146).

DEFENDANT'S RESPONSE: Admitted.

4.     The text of the Ten Commandments Monument reads

*The Ten Commandments*
*I AM the LORD thy God.*

*I. Thou shalt have no other gods before me.*
*II. Thou shalt not take the Name of the Lord thy God in vain.*
*III. Remember the Sabbath day, to keep it holy.*
*IV. Honor thy father and thy mother, that thy days may be long upon the land which the Lord thy God giveth thee.*
*V. Thou shalt not kill.*
*VI. Thou shalt not commit adultery.*
*VII. Thou shalt not steal.*
*VIII. Thou shalt not bear false witness against thy neighbor.*
*IX. Thou shalt not covet thy neighbor's house.*
*X. Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's*

(Pl. Ex. E, Photographs of Ten Commandments Monument, P5, P17, P136, P141-P143, NewKen-Arnold 01142-01155, 01169-01171; ECF No. 1-2).

DEFENDANT'S RESPONSE: Admitted.

5.     The Ten Commandments Monument also displays two small tablets inscribed with unreadable text at the top of the Monument. Between and slightly below these small tablets is an all-seeing eye. Below the all-seeing eye and immediately above the Ten Commandments is a bird, appearing to be an eagle, clutching an American Flag. At the bottom of the Commandments, are two Stars of David and the Chi-Rho symbol. Below these symbols a scroll is carved that contains text indicating that the Monument was presented to the New Kensington School District by the Eagles. (Pl. Ex. E).

DEFENDANT'S RESPONSE: Admitted.

6.      The Ten Commandments Monument was designed to represent the kind of stone the first commandment was written on and given to Moses. (Pl. Ex. D) (A.125).

DEFENDANT'S RESPONSE: Admitted.  By way of further response, the monument has also been described as resembling a tombstone.  (A.125)[1]

7.      The Ten Commandments Monument was placed on the grounds of the New Kensington High School. (Pl. Ex. D).

DEFENDANT'S RESPONSE: Admitted. By way of further response, the building is now known as Valley High School.

8.      An unveiling ceremony was held at the high school building on September 20, 1957. (Pl. Ex. D; Pl. Ex. F, Daily Dispatch Sept. 21, 1957 news article, NewKen-Arnold 00147).

DEFENDANT'S RESPONSE: Admitted.

9.      Rabbi Herbert Panitch was scheduled to perform a short service at the unveiling. (Pl. Ex. D)

DEFENDANT'S RESPONSE: Admitted.

10.     The unveiling program was scheduled to include participation by the New Kensington band, an invocation by Reverend R. Vincent Hartman, and a benediction by Father Joseph Sullivan. (Pl. Ex. D).

DEFENDANT'S RESPONSE: Admitted.

---

[1] For the Court's convenience, copies of relevant documents, exhibits and the relevant pages from depositions transcripts have been included in the Appendix to Defendant's Concise Statement of Material Facts and Corresponding Brief in Support of Motion for Summary Judgment and Supplemental Appendix to Defendant's Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Response to Plaintiffs' Concise Statement of Material Facts.  The Appendix and Supplemental Appendix will hereinafter be cited to as "A. __".

11.     The Ten Commandments Monument was scheduled to be presented by William E. Mitchell of the Eagles and accepted by Bruce Shaw, the New Kensington senior class president. (Pl. Ex. D; Pl. Ex. F).

DEFENDANT'S RESPONSE: Admitted.

12.     Prior to the ceremony, William Mitchell announced that the Eagles' youth guidance program—of which the gift of the Ten Commandments Monument was part—"wanted to give something to youth that they can remember through life." (Pl. Ex. D).

DEFENDANT'S RESPONSE: Admitted.

13.     James Whalen (past president of the Eagles), O. Leroy Morris, (speaker at a student assembly that followed the unveiling), William Mitchell, Frank Oliver (high school principal), Bruce Shaw, Ed Flynn (secretary of the Eagles), Rabbi Herbert Panitch, Father Jonathan Sullivan, Fran Parry (chairman of the Monolith Committee), and Garfield Jones (New Kensington school director) attended the unveiling. (Pl. Ex. E).

DEFENDANT'S RESPONSE: Admitted.

14.     The Eagles made numerous other presentations of Ten Commandments monuments to municipalities around the same time period, including one at nearby Connellsville Joint School District in June of the same year. (Pl. Ex. G, The Daily Courier June 1957 news article, Connellsville 00079; Pl. Ex. H, The Daily Courier June 3, 1957 news article, Connellsville 00080).

DEFENDANT'S RESPONSE: Admitted.

15.     During the presentation at Connellsville, George Strine, a representative of the grand aerie of the Fraternal Order of Eagles presented the monument and stated

> Without a moral code; men fail to be good neighbors and nations do not live
> at peace with one another. Without a moral code, we are soon lost in personal

4

> or notional frustration. But, given a firm morality, peace inside men and
> among nations can become a reality. Such a code is the Commandments,
> written with the fingers of God.

(Pl. Ex. H).

DEFENDANT'S RESPONSE: Immaterial. What was said during the presentation

ceremony of a monument at a different school district is not relevant to the issues in the present

case.

16.     A dedication of the New Kensington High School where the Ten Commandments

Monument was placed occurred in 1957. (Pl. Ex. I, Dedication Program for New Kensington

High School from Nov. 18, 1957, NewKen-Arnold 00149-162).

DEFENDANT'S RESPONSE: Admitted.

17.     The Dedication Program included an invocation by Rabbi Herbert Panitch, who

participated in the unveiling ceremony of the Ten Commandments Monument, a prayer, and a

benediction. (Pl. Ex. I).

DEFENDANT'S RESPONSE: Admitted.

**The Location of the Ten Commandments Monument**

18.     The school property on which the Ten Commandments Monument is displayed

serves as the high school for the New Kensington Arnold School District (NKASD) and is

referred to as Valley High School. (Pl. Ex. E; Pl. Ex. K, Deposition of Dr. George Batterson, 6-9,

Pl. Ex. L, Deposition of John Pallone, 12-13; Pl. Ex. M, Deposition of Robert Pallone,105-111).

DEFENDANT'S RESPONSE: Admitted.

19.     The Ten Commandments Monument is located in a grassy area between two

parallel concrete sidewalks or footpaths that pass over a small creek and extend from the parking

lot area to the gymnasium of the Valley High School (the "footpaths"). (Pl. Ex. E; Pl. Ex. M, 105-106, 108-111; Pl. Ex. N, Robert Pallone Drawing (Deposition Exhibit P11)).

DEFENDANT'S RESPONSE: Admitted in part.  The monument is located in a poorly lit area, partially obscured by shrubs, and is fifteen feet from a pathway that leads to an entrance that is not the main student entrance.  (Complaint, Exhibits 1 and 2; A.7; A.27; A.51)

20.     The footpaths lead to the entrance to the gymnasium. (Pl. Ex. M, 105-106, 108).

DEFENDANT'S RESPONSE: Admitted in part. There are other entrances to the gymnasium. (See, e.g., floor plan that is part of Plaintiffs' Exhibit I)

21.     The front of the Ten Commandments Monument is visible from the footpaths. (Pl. Ex. E).

DEFENDANT'S RESPONSE: Admitted in part.  While the front of the monument is visible from the footpaths, there is no testimony establishing how close an observer must be to the monument to be able read or make out any words or symbols contained on the monument. Some who have lived in the area all their lives and passed the FOE monument countless times never paid attention to it or rarely noticed it.  (A.48-A.49; A.73 at ¶3)  Some who have walked past the FOE monument for 50 years never saw or read what was on it and assumed it was a monument to war veterans.   (A.57 at p.18; A.59-A.60 at pp. 105-106)  Doe 1 testified that she has walked past the monument while attending events at the high school, but never read or paid any attention to it.  (A.67-A.68)  Many people told the superintendent that they never notice the monument, that it is inconspicuous.  (A.19)  Additionally, given the time that students enter the school building during the school year, it is dark and the monument would not be visible.  (A.61 at p. 111).

22.     The side and rear of the Ten Commandments Monument is visible from the sidewalk that runs perpendicular to the footpaths along the front of the Valley High School. (Pl. Ex. E, NewKen-Arnold 01142-01143, 01169-01171).

DEFENDANT'S RESPONSE: Admitted.

23.     The rear of the Ten Commandments Monument is visible from the gymnasium entrance. (Pl. Ex. E, NewKen-Arnold 1155).

DEFENDANT'S RESPONSE: Admitted in part.  The back of the monument is visible from one of the entrances to the gym.  As shown by the floor plan included as part of Plaintiffs' Exhibit I, there are several entrances to the gym.

24.     Students enter the Valley High School in the morning by using the footpaths to enter the building. (Pl. Ex. M, 111).

DEFENDANT'S RESPONSE: Admitted in part.  A few students may enter the school by using the walkway that passes fifteen feet from the monument.  That entrance, however, is not the main student entrance.  (A.7)

25.     The footpaths are also used as the primary means of entrance when individuals attend athletic events. (Pl. Ex. M, 110-111; Pl. Ex. K, 9, 17).

DEFENDANT'S RESPONSE: Admitted in part.  It is admitted that the entrance is one of the entrances used to attend athletic events being held in the gymnasium.  None of the witnesses cited by Plaintiffs, however, testified that this entrance is "the primary means of entrance" as claimed by Plaintiffs.  (See testimony cited by Plaintiffs in paragraph 25 of their Concise Statement)  By way of further response, given the time of the day that athletic events are held during the school year, it is dark by the time the events are held and the monument would not be visible to students using the entrance.  (A.61 at p. 110)

26.     The parking lot area adjacent to where the footpaths begin (*see* Pl. Ex. E, NewKen-Arnold 01155) is used for student parking. (Pl. Ex. M, 109; Pl. Ex. N).

DEFENDANT'S RESPONSE: Admitted.

27.     In response to a former student's email in which the student explained that the Monument moved the student to prayer when he attended classes at Valley High School, Former superintendent George Batterson testified that he encountered the Ten Commandments Monument frequently and said a silent prayer every time he walked by the Monument, (Pl. Ex. K, 9; Pl. Ex. R, March 24, 2012 Email from Batterson, NewKen-Arnold 00354), while both NKASD Board President Robert Pallone and his brother, current Superintendent John Pallone—both lifelong members of the NKASD community—claim to have never known what was on the Monument until the District received the FFRF letter. (Pl. Ex. L, 6, 11-13; Pl. Ex. M, 8, 18).

DEFENDANT'S RESPONSE: Admitted in part.  Batterson testified that he is a person with strong religious convictions who prays "all the time."  (A.8)

28.     Batterson testified that there is nothing else like the Ten Commandments Monument at Valley High School. (Pl. Ex. K, 10).

DEFENDANT'S RESPONSE: Denied.  Plaintiffs incorrectly paraphrase Batterson's testimony.  Batterson did not testify that there are no other monuments.  In response to the question as to whether he was moved to prayer anywhere else on school grounds, Batterson stated, "Well, no.  There is nothing like the monument that is there or anything, but I pray all the time actually."  (A.8)  By way of further response, New Kensington-Arnold School District (hereinafter "NKASD") has several other monuments and memorials, including a memorial regarding the first African-American professional quarterback.  (A.120-A.121)

**The FFRF Demand Letter and NKASD's Response**

29.     FFRF is a national non-profit 501(c)(3) educational charity and membership organization that is dedicated to promoting the constitutional principal of separation of state and church and to educate the public on matters relating to nontheism. (Pl. Ex. O, FFRF Website, www.ffrf.org/faq/item/14999-what-is-the-foundations-purpose).

DEFENDANT'S RESPONSE: Denied to the extent that Plaintiffs claim that Freedom From Religion Foundation (hereinafter "FFRF") is a "membership organization."  FFRF apparently provides memberships as "gifts" to persons who have never applied to be members in FFRF.  (A.43-A.44)

30.     On February 19, 2012, Freedom From Religion Foundation received a complaint from a student from outside the District who was visiting the Valley High School regarding the Ten Commandments Monument. (Pl. Ex. P, Rebecca Markert Declaration).

DEFENDANT'S RESPONSE: Denied.  Plaintiffs have never produced a copy of the actual complaint allegedly made regarding the monument.  This assertion made by an FFRF attorney as to the contents of the actual complaint is hearsay.

31.     In response, on March 20, 2012, staff attorney Patrick Elliot sent a letter to then Superintendent George Batterson requesting that the Ten Commandments Monument be removed (the "FFRF Letter"). (Pl. Ex. Q, March 20, 2012 letter from FFRF to George Batterson, P2-P4; Pl. Ex. K, 10).

DEFENDANT'S RESPONSE: Admitted in part.  It is admitted that FFRF sent a letter to NKASD demanding the removal of the monument.  The motivation for FFRF's letter has not been established by the record.

32.     Upon receiving the FFRF Letter, Superintendent Batterson read the letter to his Board of School Directors and one of the District solicitors in executive session before a regularly scheduled NKASD Board, which took place on March 22, 2012. (Pl. Ex. K, 10-11, 14-15, Pl. Ex. S, March 23, 2012 Tribune-Review news article, P21-P23).

DEFENDANT'S RESPONSE: Admitted.

33.     After Batterson read the FFRF Letter in executive session, the Board informed him that he should consult with legal counsel and that the Board wanted to keep the Monument. (Pl. Ex. K, 11).

DEFENDANT'S RESPONSE: Admitted.

34.     None of the NKASD Board members sided with removing the Ten Commandments Monument at the executive session. (Pl. Ex. K, 12-13).

DEFENDANT'S RESPONSE: Admitted.   By way of further response, none of the Board members expressed a religious reason for keeping the monument.  (A.64 at pp.127-128)

35.     NKASD Board President Robert Pallone testified that the Board informally agreed that it was not going to remove the Ten Commandments Monument. (Pl. Ex. M, 33-35).

DEFENDANT'S RESPONSE: Admitted in part.  Robert Pallone testified that the Board agreed to not remove the monument.  He did not state whether this agreement was "formal" or "informal."

36.     According to Robert Pallone, all of the administrators present when the FFRF Letter was discussed supported keeping the Monument and those administrators he spoke with on the side felt the same way. (Pl. Ex. M, 34).

DEFENDANT'S RESPONSE: Admitted.  By way of further response, none of the Board members expressed a religious reason for keeping the monument.  (A.64 at pp. 127-128)

37.     By March 23, 2012, the local media had picked up the story of the FFRF Letter and NKASD's intention to not move the Ten Commandments Monument. (*See e.g.,* Pl. Ex. S).

DEFENDANT'S RESPONSE: Admitted.

38.     Around March 23, 2012, Batterson and NKASD began receiving a large number of calls and emails regarding the FFRF Letter and the situation with the Ten Commandments Monument. (Pl. Ex. K, 27; *See* Pl. Exs. EE, II).

DEFENDANT'S RESPONSE: Admitted in part.  It is admitted that NKASD received several calls and emails concerning the monument, almost all of which were in favor of keeping the monument.  To the extent that Plaintiffs are claiming that Exhibits EE and II are copies of emails, that claim is denied as neither exhibit is an email to NKASD.

39.     On March 23, 2012, Batterson stated to the Tribune-Review, "We're not happy with them asking us to take down the Ten Commandments." (Pl. Ex. S).

DEFENDANT'S RESPONSE: Admitted.

40.     On March 23, 2012, Batterson sent an email stating, "If we pray about [the Ten Commandments issue] God will help our children to win out over the atheist organization that wants to impose their will on us." (Pl. Ex. T, March 23, 2012 email from Batterson, NewKen-Arnold 00348).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)

11

41.      On March 23, 2012, Batterson indicated that he interviewed with local media and that he "used the script I prepared after talking to [the solicitors]." (Pl. Ex. K, 40-41; Pl. Ex. U, March 23, 2012 email from Batterson, NewKen-Arnold 01092).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That Batterson, when speaking on behalf of NKASD as superintendent of the school district, set forth NKASD's position on the monument instead of expressing any personal beliefs, is irrelevant to the issues in the present case.  By way of further response, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God."  (A.8) Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)  Further, despite Batterson's personal beliefs, if the school board had directed him to take down the FOE monument, he would have done so.  (A.89-A.90)  In fact, despite Batterson's personal beliefs, when directed to do so by NKASD, he prevented a group of ministers from holding a rally at the monument.  (A.86-A.87)

42.      On March 26, 2012, it was reported that Batterson stated to the media,

> We're not happy with them asking us to take down the Ten Commandments. The One thing that's very very important that people realize is that there is no way that our school district is trying to promote or impose religion on our students. This is just a monument that was donated by the Fraternal Order of the Eagles, way back in 1957 and we see this having more historical significance than religious.

(Pl. Ex. TT, March 26, 2012 Christian Post news article, P24-P27).

DEFENDANT'S RESPONSE: Admitted.

43.      Around this time, a Facebook group called "KEEP THE TEN COMMANDMENTS AT VALLEY HIGH SCHOOL" (hereinafter the "group page") was created. (*See* Pl. Exs. V-X).

DEFENDANT'S RESPONSE: Admitted.

44.     NKASD Board President Robert Pallone, NKASD Board member Marilyn Claassen, and NKASD Board member George Zavadek participated on the group page through Facebook. (Pl. Ex. V, Pallone activity on "KEEP THE TEN…" Facebook page, P167, NewKen-Arnold 01114; Pl. Ex. W, Claassen activity on "KEEP THE TEN…" Facebook page, NewKen-Arnold 01113-01115; Pl. Ex. X, Zavadek activity on "KEEP THE TEN…" Facebook page, NewKen-Arnold 01111).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  The private actions of individual board members do not constitute the official actions or position of NKASD.

45.     Pallone posted the following comment on the "KEEP THE TEN COMMANDMENTS AT VALLEY HIGH SCHOOL" group page:

> To the community of the NKASD - I am writing this to all of you that are concerned about the Ten Commandments Monument at the high school.
>
> Clearly, we are under attack from an outside group from the state of Wisconsin - Our community, the administration, the board and our staff are outraged by the request to remove a monument that has been part of our district and community for decades. We WILL NOT remove this monument without a fight !!!!! We will litigate this issue at the highest level (US Supreme Court) if necessary. All of us in the district appreciate the overwhelming support from the community and as the current President of the board I want to assure all of you that we won't remove this monument without a battle. We are one of the most diverse school populations and communities in the Commonwealth, and we are extremely sensitive and accepting to everyone in the community. The claims of this organization are ridiculous and a complete travesty when you consider all the facts surrounding this situation.
>
> This entire situation is ludicrous and a frivolous lawsuit and request by a radical group. Let's all attempt to remain professional and mannerly as we show our support on both sides of this emotionally charged issue. Please do not allow your emotions to denigrate your support by lowering our arguments to obscenities and radical responses. Please be assured that we will fight this and litigate this in a professional manner and continue to challenge until we get a decision that is acceptable to all of us!!! We will use our current legal team and the support of outside legal scholars and organizations that have contacted the district and offered free services…

13

Sincerely,
Robert M. Pallone

(Pl. Ex. V, P167; Pl. Ex. M, 28; Pl. Ex. P). This post was later removed from Facebook.

(Pl. Ex. BBB, Def. Supp. Answers to Interrogs., 10).

DEFENDANT'S RESPONSE: Immaterial.  The private actions of individual board members do not constitute the official actions or position of NKASD.

46.    Pallone, along with Claassen, also participated in the group page by "liking" Tom Wynkoop's post on the group page from March 24, 2012, which stated "When I was walking through New Your [sic] past the Muslim temples, I was offended. Tell th [sic] to rip it down"). (Pl. Ex, V; Pl. Ex. W).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  The private actions of individual board members do not constitute the official actions or position of NKASD. Additionally, denied to the extent that "liking" a post is characterized as "participating in the group page."

47.    Claassen participated in the group page by "liking" Julz Ann's post on the group page from March 24, 2012, which stated: "I have the solution! If the atheists group would like to erect a statue of the Theory of Evolution at their expense…we can display it beside the Ten commandments! I gladly support their right to display their beliefs it doesn't offend me, and that statue shouldn't offend them! First it's a problem with the pledge in school, then the nativity scene, now a statue. Im not even sure where this idiocy will end!" (Pl. Ex. W, NewKen-Arnold 01113).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  The private actions of individual board members do not constitute the official actions or position of NKASD.

Additionally, denied to the extent that "liking" a post is characterized as "participating in the group page."

48.    Claassen participated in the group page by "liking" John Zavadek's post on the group page from March 23, 2012, which stated: "Everyone is entitled to their opinion-this Wisconsin group and the ACLU have no right telling us what we can and can't have on our school property. I think the school district should ignore this group and we will let a judge decide. IF the judge thinks we should remove the monument the next time he is up for retention we will vote his ass out." (Pl. Ex. W, NewKen-Arnold 01115).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  The private actions of individual board members do not constitute the official actions or position of NKASD. Additionally, denied to the extent that "liking" a post is characterized as "participating in the group page."

49.    Zavadak posted an article regarding the scheduling of a rally at the Ten Commandments Monument on the group page. (Pl. Ex. X).

DEFENDANT'S RESPONSE: Admitted in part.  It is admitted that the post was made. It is denied that any rally took place at the site of the monument.  No such meeting occurred. Batterson testified that when he heard of the planned meeting, he was worried and contacted NKASD's solicitors, who told him that the meeting could not be permitted.  Batterson then contacted the minister who was organizing the meeting and informed him the meeting could not take place on school grounds.  The meeting was therefore held at a public park.  (A.86-A.87)

50.    An online petition was created on change.org and the electronically "signed" petitions were sent to the email address petition@nkasd.com. (Pl. Ex. Y, Collection of

Electronically-signed Petitions sent to petition@nkasd.org and produced by Defendant in Discovery).

DEFENDANT'S RESPONSE: Admitted that a petition was created.  Denied to the extent that Plaintiffs are attempting to imply that this petition was created or authorized by NKASD. Batterson testified that the NKASD Board of Directors would not have authorized anyone to create such a petition.  (A.84; A.13)

51.    The @nkasd.com email suffix is the NKASD District email suffix. (Pl. Ex. K, 29; *See e.g.* Pl. Ex. T (reflecting Batterson's email address ending in @nkasd.com)).

DEFENDANT'S RESPONSE: Admitted in part.  It is admitted that "nkasd.com" is an email suffix for the school district.  Denied to the extent that Plaintiffs are attempting to imply that this petition was created or authorized by NKASD.  Batterson testified that the NKASD Board of Directors would not have authorized anyone to create such a petition.  (A.84; A.13)

52.    The only person with ability to create an email using the @nkasd.com suffix was the NKASD Technology Director. (Pl. Ex. K, 29).

DEFENDANT'S RESPONSE: Denied.  Batterson testified that he thought the technology director had the ability to create district email addresses.  (A.83)

53.    The created online petition states that the Monument is constitutional and "not purely religious value." (Pl. Ex. Y).

DEFENDANT'S RESPONSE: Denied.  The petition, in its entirety, states:

This historic monument of the Ten Commandments, donated in 1957 by the Fraternal Order of Eagles, should remain in its current location at Valley High School. The monument has stood in its current location for the past 55 years and is a piece of history in the community. The monument was not paid for with tax dollars, rather was donated by the New Kensington Aerie Fraternal Order of Eagles with the support of Cecil B. DeMille, who had directed the film The Ten Commandments the prior year. We feel that this monument is constitutional, as it represents historical value and not purely religious value. It would be a great

injustice to the city of New Kensington and the New Kensington-Arnold School District, it's citizens and students, past and present, and its surrounding neighbors and communities to remove a piece of history from its intended location. (Plaintiffs Exhibit Y)

54.     The language of the online petition itself is in line with the District's stated position on the Ten Commandments Monument. (Pl. Ex. K, 31).

DEFENDANT'S RESPONSE: Admitted in part.  Batterson testified that, to the extent that the petition stated that the monument was a historical landmark, it would be consistent with the school district position.  To the extent that there was any language added, such as the Ten Commandments were handed down to Moses by God, that would not be the school district's position.  (A.13; A.85)

55.     The petition@nkasd.com email address received 469 signed online petitions over less than one week between March 30, 2012 and April 4, 2012. (Pl. Ex. Y).

DEFENDANT'S RESPONSE: Admitted.

56.     Some of the signed petitions contained only the name of the person signing the petition, while others contained comments of the individuals who were signing. For example, one such signed petition read, "Our great Country was based on Christian values, and I'm sick and tired of atheists, and other religious groups who feel that they have the right to take away the precious things that we believe in." (Pl. Ex. Y, NewKen-Arnold 00537).

DEFENDANT'S RESPONSE: Immaterial.  That NKASD's decision to keep the monument happened to coincide with the religious beliefs of some people is irrelevant to the issues in the present case.  Additionally, many of the people signing the petition were apparently not from the NKASD area, did not attend Valley High School and had never seen the monument, and, therefore, their opinions are irrelevant to the issues in the present case.  Further, none of the people signing the petitions who have seen the monument expressed or implied that the

monument endorses religion, that they believed that the monument was requiring them to believe in God, or that the monument made them feel as though they were outsiders in the community. (Plaintiffs' Exhibit Y)

57.     On March 26, 2012, Batterson sent an email to Sara Costanza with a link to his interview with a Christian radio station in Colorado and indicated "[i]t has been a lot of fun for me[, and] I know we are doing the right thing in God's eyes." (Pl. Ex. Z, March 26, 2012 emails from Batterson, NewKen-Arnold 01086-01087, 01003).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)

58.     On March 29, 2012, Batterson sent an email to his fiancé regarding the Ten Commandments situation and stated, "The atheist group from Wisconsin are suing us but I think God prevails in issues like this in the end. I am happy I am in a position to do what is right for all of the Christians and my students." (Pl. Ex. K, 58-59; Pl. Ex. AA, March 29, 2012 email from Batterson, NewKen-Arnold 01095).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not

view the monument as an endorsement of religion.  (A.15-A.16)  Batterson also admitted under

oath that, in the emails and communications with his fiancée regarding the monument, he was

perhaps trying to make himself seem more important.  (A.91)

59.    On March 31, 2012, Batterson sent another email to his fiancé and stated, "I was

wondering why God had me go [to New Kensington-Arnold]. Now my career is ending in three

months but I am doing a good job defending the Ten Commandments. I have influenced my

board and community to stand up to the atheists. May God had this plan for me here. I know he

is helping me. I have had thousands of emails and letters of support from all over the country. It

has been quite an awesome experience and I know I am doing God's work." (Pl. Ex. BB, March

31, 2012 email from Batterson, NewKen-Arnold 01096).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That

NKASD's decision to keep the monument happened to coincide with Batterson's personal

religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he

did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God."

(A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not

view the monument as an endorsement of religion.  (A.15-A.16)  Batterson also admitted under

oath that, in the emails and communications with his fiancée regarding the monument, he was

perhaps trying to make himself seem more important.  (A.91)

60.    On March 30, 2012, Batterson responded to an email and thanked a former

NKASD graduate for his support, indicating "[w]e are going to not cave in. I am determined to

keep the Ten Commandments on our high school lawn. We are doing the right thing for our

children, community and graduates." (Pl. Ex. GG, March 30, 2012 email from Batterson,

NewKen-Arnold 00502).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)

61.     On March 30, 2012, Batterson responded to another email and indicated that "We have the support of our entire student body, community and many Christians like you from all over the country. We are doing the right thing and will prevail over a small group of atheists who should mind their own affairs in Wisconsin. We can not let people like this continue to undermine or [sic] values and impose their will on the vast majority of Americans." (Pl. Ex. HH, March 30 email from Batterson, NewKen-Arnold 01075).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)

62.     Similarly, on April 8, 2012, Batterson sent an email stating, "I have the total support of the students in my school, community and board of school directors. It has been quite awesome for me. I know God is helping me do what is right. No ever stands up to the atheists on things like this but we are doing it!" (Pl. Ex. II, April 8, 2012 email from Batterson, NewKen-Arnold 01087).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God." (A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not view the monument as an endorsement of religion.  (A.15-A.16)

63.     In a March 29, 2012 news article it was reported that Batterson had received more than 1,000 emails and calls in support of the monument and only three message opposing it. (Pl. Ex. EE).

DEFENDANT'S RESPONSE: Admitted.

64.     As of April 8, 2012, Batterson indicated that he had received "1,500 emails, phone calls and letters of support from Christians all over the County." (Pl. Ex. II).

DEFENDANT'S RESPONSE: Immaterial.  The opinions of persons from across the country not from the NKASD area, who did not attend Valley High School and had never seen the monument, are irrelevant to the issues in the present case.

65.     In the same email, Batterson identified the situation as "one of the coolest things that ever happened to [him]" and identified himself as the spokesperson for the District who had the opportunity to "say to the atheists we will not take the Ten Commandments down." (*Id.*).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That NKASD's decision to keep the monument happened to coincide with Batterson's personal religious beliefs is irrelevant to the issues in the present case.  Further, Batterson testified that he did not view a response to the FFRF letter "as an opportunity to sort of affirm the word of God."

(A.8)  Additionally, despite being a person with strong religious convictions, Batterson did not

view the monument as an endorsement of religion.  (A.15-A.16)

      66.    On April 4, 2012, Batterson interviewed with Cornerstone T.V. and "stuck to the

script . . . about how this is a historical monument." (Pl. Ex. KK, NewKen-Arnold 01108).

      DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  That

Batterson, when speaking on behalf of NKASD as superintendent of the school district, set forth

NKASD's position on the monument instead of expressing any personal beliefs, is irrelevant to

the issues in the present case.  By way of further response, Batterson testified that he did not

view a response to the FFRF letter "as an opportunity to sort of affirm the word of God."  (A.8)

Additionally, despite being a person with strong religious convictions, Batterson did not view the

monument as an endorsement of religion.  (A.15-A.16)  Further, despite Batterson's personal

beliefs, if the school board had directed him to take down the FOE monument, he would have

done so.  (A.89-A.90)  In fact, despite Batterson's personal beliefs, when directed to do so by

NKASD, he prevented a group of ministers from holding a rally at the monument.  (A.86-A.87)

      67.    On April 10, 2012, Pallone sent an email stating:

> Thank you for your well stated and thoughtful e-mail regarding our situation
> with the Ten Commandments monument in our school District. I hope the
> radical group that is challenging us on this has "buckled up" and I truly hope
> they are ready for a fight! We have no intentions of removing the monument
> and are FULLY prepared to investigate all options for keeping it and fighting
> this ludicrous complain all the way to the United States Supreme Court. . .
> We are confident that we have more than adequate legal grounds to win this
> case and dismiss this radical group from gaining traction on this issue. That
> being said, what is truly heart-warming is the support, letters, facebook posts,
> etc of people like YOU! We have gotten overwhelming support and many
> kind words from people like you and all the support is what keeps us focused
> on our one and only acceptable outcome: **<u>KEEPING OUR MONUMENT in
> place</u>**. . .
> Thank you very much for your e-mail and thank you for the support of our
> cause. I am confident we will win, but it is the support that we have received

that is keeping us focused and on track for keeping the monument on school
grounds.

(Pl. Ex. LL, NewKen-Arnold 00887) (emphasis in original).

DEFENDANT'S RESPONSE: Admitted that the NKASD community expressed

overwhelming support to keep the monument.  Contrary to the implication Plaintiffs are trying to

make, none of the supportive comments were based on the religious nature of the Ten

Commandments.  (A.119) Many of those expressing support were insulted by the actions of an

out-of-state organization demanding that the school district remove the monument. (A.123 at p.

38)

68.     On April 18, 2012, Audrey Sleigh, NKASD Board secretary, sent an email to a

number of local clergy members inviting them to the "Clergy Luncheon" on May 2, 2012.

Included on the agenda for the Clergy Luncheon was the "historical monument (Ten

Commandments)." (Pl. Ex. MM, NewKen-Arnold 01045; Pl. Ex. M, 53).

DEFENDANT'S RESPONSE: Immaterial to the issues in the present case.  By way of

further response, other topics included a budget discussion.  (Plaintiffs' Exhibit MM)

Additionally, Batterson had lunch with community clergy members about four times a year

beginning in 2007, five years before any complaints were made about the monument.  (A.88)

69.     Batterson initiated clergy luncheons when he arrived at the District and held them

for the purpose of he and his administrators developing "personal relationships with clergy

members so that [they] could get to know them better and with the thought that should we have

any kinds of issues that occurred in the District." (Pl. Ex. K, 45-46).

DEFENDANT'S RESPONSE: Immaterial to the present case.  That Batterson sometimes

had lunch with community clergy members to build a relationship and be able to ask for their

assistance with issues, such as when a student died to obtain assistance for grieving students and families, is irrelevant to the issues in the present case.

70.     Batterson also used the clergy luncheons to present the NKASD school budget to the ministers "in hopes that they would support the school budget when they had their congregations in their church." (Pl. Ex. K, 46).

DEFENDANT'S RESPONSE: Immaterial to the present case.

**Community Reaction to the FFRF Letter and NKASD Action**

71.     As of March 23, 2012, the local media reported that community member Mike Hresko was seeking to organize a rally in support of keeping the Ten Commandments Monument. (Pl. Ex. S).

DEFENDANT'S RESPONSE: Immaterial to the present case.

72.     Monsignor Michael J. Begolly, a pastor of a Roman Catholic church in New Kensington was quoted in a March 24, 2012 article as saying, "In this community, I think most people believe in the Ten Commandments and try to live their life that way." (Pl. Ex. NN, P55-P57).

DEFENDANT'S RESPONSE: Immaterial to the present case.  NKASD does not try to instill religious beliefs in its students, it only tries to educate students.  (A.13)  NKASD decided to keep the monument because it does not endorse religion, has become part of the front lawn of the high school, and the monument has historical significance.  (A.13; A.15; A.53; A.62 at p. 117; A.63 at p. 122; A.64-A.65 at pp. 127-129, 137)  That the decision of NKASD to not remove the monument coincides with the religious beliefs of some people is irrelevant to the issues in the present case.

73.     Pastor Dean Ward, a pastor of a New Kensington church was quoted in a March 29, 2012 article as saying, "This is a very value-driven community and the Ten Commandments mean a great deal to most people here in the Valley." (Pl. Ex. UU, March 29, 2012 Pittsburgh Tribune-Review news article, P38-P40).

DEFENDANT'S RESPONSE: Immaterial to the present case.  NKASD does not try to instill religious beliefs in its students, it only tries to educate students.  (A.13)  NKASD decided to keep the monument because it does not endorse religion, has become part of the front lawn of the high school, and the monument has historical significance.  (A.13; A.15; A.53; A.62 at p. 117; A.63 at p. 122; A.64-A.65 at pp. 127-129, 137)  That the decision of NKASD to not remove the monument coincides with the religious beliefs of some people is irrelevant to the issues in the present case.

74.     In a March 30, 2012 news article, many local citizens were quoted as offering religious-based support for the District's stated position of retaining the Monument. (Pl. Ex. VV, March 30, 2012 Pittsburgh Tribune-Review news article, P48-P50).

DEFENDANT'S RESPONSE: Denied.  To the contrary, most of the people supporting NKASD's refusal to remove the monument gave reasons such as that the monument "has historical meaning unconnected to the church, politics or Hollywood"; that "'a group from Wisconsin' shouldn't meddle in affairs in Southwestern Pennsylvania"; that "the marker should remain because it's a long-standing part of the school's history"; that they "support what the district has already decided:  that this monument stands as a historical monument";  and that support was not for religious reasons, but for "patriot reasons."  (Plaintiffs' Exhibit VV)

75.     Pallone testified that he had an understanding early on that the people in the

community he encountered clearly valued the presence of the Ten Commandments Monument.

(Pl. Ex. M, 47).

DEFENDANT'S RESPONSE: Denied as Plaintiffs inaccurately paraphrase the

testimony.  R. Pallone testified that he believed that most people see the monument as being part

of the school for 50 years and they clearly value it based on what they said to him.  (A.124 at p.

47)

76.     A number of NKASD alumni sent supportive emails to Batterson. (Pl. Ex. OO,

Collection of emails from community members).

DEFENDANT'S RESPONSE: Admitted that supportive emails were sent, denied to the

extent that Plaintiffs are attempting to imply that the support was based on religious reasons.

Many of the supporting emails did not specifically set forth the basis for the support.  Of those

that did express a reason for the support, most were not for religious reasons.  For example, one

email from a former student stated that he was never required to read the monument, was never

told he had to believe what was inscribed on the monument, and that the monument was not used

as a venue for religious ceremonies, but rather as a convenient landmark for arranging to meet

someone before or after school (Plaintiffs' Exhibit OO, email from Chet Jack); another email

stated that the monument had been there for 50 years and there was no reason to remove it, and

that while the person was a student at the high school in the 1980s, she didn't even notice the

monument (Plaintiffs' Exhibit OO, email from Debbie Rayburn); another email stated that the

demand to remove the monument was "ridiculous" and that the FFRF "should take their noses

out of our business and keep them in Wisconsin"  (Plaintiffs' Exhibit OO, email from Emily

Whitlinger, March 24, 2012); in another email, this same person, who attended the high school

for 4 years, expressed that the monument should be retained because it "has been in front of

Valley High School for YEARS!  Rain or shine, snow or sleet, wins or losses, good day and bad

days.  And it is still going to be there because the student body and all alumni look up to it and

love the fact that it is part of the Viking they are inside.[2] . . .  The group who wants it taken

down is from Wisconsin, what do they have to do with Valley High School???  . . . no one else

has complained all these years – they are just trying to ruin a good thing"  (Plaintiffs' Exhibit

OO, email from Emily Whitlinger, March 23, 2012, footnote added); another email stated, "This

is terrible that a group of agnostics from Wisconsin and 2 New Kensington parents can dictate

what should be done with the monument.  I am ashamed to say in the 3 years I went [there] I

didn't know the monument was [there]" (Plaintiffs' Exhibit OO, email from Elizabeth Flynn);

and another email, from a graduate of the class of 1965, state, "This has been there since 1957.

It has not hurt anyone since it was put there and it is not hurting anyone now. . . .  They can stay

in Wisconsin and not worry about it" (Plaintiffs' Exhibit OO, email from Don Boland).

   77.    On March 29, 2012, a local clergyman, Mitchel Nickols, sought to organize a

"Gathering of Faith" at the Ten Commandments Monuent, and Nickols informed Batterson that

Cornerstone Television may want to obtain a statement from Batterson for Christian television.

(Pl. Ex. CC, March 29, 2012 email from Nickols to Batterson, NewKen-Arnold 01074).

   DEFENDANT'S RESPONSE: Denied.  The gathering was held in a parking lot, not at

the monument.  (Plaintiffs' Exhibit CC and DD)  Batterson attempted to discourage the

gathering.  (Plaintiffs' Exhibit DD)  Additionally, contrary to the implications Plaintiffs are

trying to make, the support for the monument was not based on religious reasons.  Mitch

Nickols, the organizer of the gathering, stated, "We are just here to show our support of **keeping**

---

[2] Valley High School's mascot is the Viking.

**this historic landmark where it is**." (Plaintiffs' Exhibit EE, second page, emphasis added) Another person attending the gathering stated, "I'm here to support the freedom that we are supposed to have in this country." (Plaintiffs' Exhibit EE, second page) Batterson was also quoted as saying, "We don't promote any religions or push any religions. We don't think having the Ten Commandments monument in front of our high school is influencing them to become Christian, Jewish, or any other religion." (Plaintiffs' Exhibit EE, second page)

78.     A gathering of 40-45 people occurred on March 29, 2012, including Mitch Nickols. (Pl. Ex. DD, NewKen-Arnold 01100; Pl. Ex EE, March 29, 2012 WPXI news article, P36-P37).

DEFENDANT'S RESPONSE: Denied that the gathering occurred at the monument or that the purpose of the gathering was to show religious support for keeping the monument. The gathering was held in a parking lot, not at the monument. (Plaintiffs' Exhibit CC and DD) Mitch Nickols, the organizer of the gathering, stated, "We are just here to show our support of **keeping this historic landmark where it is**." (Plaintiffs' Exhibit EE, second page, emphasis added)   Another person attending the gathering stated, "I'm here to support the freedom that we are supposed to have in this country." (Plaintiffs' Exhibit EE, second page) Batterson was also quoted as saying, "We don't promote any religions or push any religions. We don't think having the Ten Commandments monument in front of our high school is influencing them to become Christian, Jewish, or any other religion." (Plaintiffs' Exhibit EE, second page)

79.     Batterson was quoted in the newspaper article as saying, "We've decided to take a hard line on this, we have legal counsel, and we are not going to remove the Ten Commandments." (Pl. Ex. EE).

DEFENDANT'S RESPONSE: Admitted that such a statement was made, denied to the extent that Plaintiffs are attempting to imply that Batterson was expressing a religious reason for keeping the monument. To the contrary, Batterson was also quoted as saying, "We don't promote any religions or push any religions.  We don't think having the Ten Commandments monument in front of our high school is influencing them to become Christian, Jewish, or any other religion."  (Plaintiffs' Exhibit EE, second page)

80.     Batterson reported of the gathering that "the ministers in [his] community, parents and Christians prayed on our front lawn by the Ten Commandments." (Pl. Ex. II).

DEFENDANT'S RESPONSE: Denied.  The gathering took place in the parking lot. Nothing in the news report refers to any praying occurring during the gathering.  (Plaintiffs' Exhibit EE)

**Doe Plaintiffs' Encounters with and Complaints regarding the Ten Commandments Monument**

81.     Plaintiff Schaub resides within the city of Arnold and the New Kensington-Arnold School District. (Pl. Ex. QQ, Declaration of Plaintiff Marie Schaub, ¶ 1).

DEFENDANT'S RESPONSE: Admitted.

82.     [REDACTED]. (Pl. Ex. PP, 26).

DEFENDANT'S RESPONSE: [REDACTED].

83.     Plaintiff Schaub identifies as an atheist. (Pl. QQ, ¶ 12).

DEFENDANT'S RESPONSE: Admitted.

84.     Plaintiff Schaub views the Ten Commandments Monument as "commanding" that students and visitors worship "thy God." (Pl. QQ, ¶ 13).

DEFENDANT'S RESPONSE: Denied.  Schaub never testified that she views the monument as commanding that students worship God.  Schaub has walked by the monument on

only one occasion, which occurred in 2007 or 2008.  In describing this occasion, Schaub testified, "I kind of looked at it out of the corner of my eye, didn't really think too much about it and I just kept on walking."  (A.36)

85.    Plaintiff Schaub sees the presence of the Ten Commandments Monument in front of the Valley High School as signaling that she is an outsider because she does not follow the particular religion or god that the Monument endorses. (Pl. QQ, ¶ 14).

DEFENDANT'S RESPONSE: Denied.  Schaub never testified that she saw the presence of the monument as signaling that she is an outsider.  Schaub has walked by the monument on only one occasion, which occurred in 2007 or 2008.  In describing this occasion, Schaub testified, "I kind of looked at it out of the corner of my eye, didn't really think too much about it and I just kept on walking."  (A.36)  From the time that Schaub walked past the monument in 2007 or 2008, until the time FFRF began this controversy, Schaub never expressed any objection or complaint about the monument.  [REDACTED] (A.126)  "WHY DID IT TAKE YOU TIL MARCH 29 TO CARE, MARIE???!!!"  (Id, capitalization in original)  "You jump on bandwagons, Marie . . . and I'll never respect that.  I can respect different views, but not when they are only following the actions of a group in another state.  Why did a Wisconsin group have to make you aware of this?  Ridiculous."  (ellipsis in the original) (A.127)

86.    [REDACTED]. (Pl. QQ, ¶ 15).

DEFENDANT'S RESPONSE: Denied.  [REDACTED].  (A.93; A.94; Plaintiffs' Concise Statement, ¶102)

87.    Plaintiff Doe 1 does not believe in God. (Pl. Ex. RR, 13).

DEFENDANT'S RESPONSE: Admitted.

88.     Plaintiff Doe 1 feels that the NKASD wants her to believe in God because of the presence of the Ten Commandments Monument in front of the Valley High School. (Pl. RR, 23).

DEFENDANT'S RESPONSE: Denied.  To the contrary, Doe 1 testified that, on the occasions when she walked by the monument, "I just didn't really pay attention to it.  I was just kind of ignoring it because I really didn't care about it."  (A.67)  She has never read the monument or paid any attention to it, so would have nothing to say about.  (A.67)  She only looked at a picture of the monument because Schaub, her mother, was worried about it.  (A.67-A.68)  She hasn't looked at the FOE monument itself, she only knows what is on it from looking at pictures.  (A.69)  When asked if the monument made her feel anything, Doe 1 testified that she really didn't feel anything and, "No, I don't feel like I have to believe in God . . ."  (A.71)

89.     Plaintiff Doe 1 was a student in the NKASD until the beginning of the 2014-2015 school year. (Pl. Ex. PP, Deposition of Plaintiff Marie Schaub, 26; PL. Ex. QQ, ¶¶ 6, 8-9).

DEFENDANT'S RESPONSE: Admitted.

90.     Plaintiff Doe 1 was scheduled to attend the Valley High School for the 2014-2015 school year, but Doe 1's family made the decision to avoid bringing Doe 1 into daily contact with the Ten Commandments Monument and withdrew Doe 1 from the NKASD. (Pl. Ex. QQ, ¶¶ 8-10, 15, 21, 23, 27).

DEFENDANT'S RESPONSE: Admitted in part, denied in part.  It is admitted that Doe 1 was scheduled to attend Valley High School for the 2014-2015 school year.  It is denied that Doe 1's family withdrew her from the school district to avoid bringing Doe 1 into contact with the monument.  [REDACTED] (A.93; A.94; Plaintiffs' Concise Statement, ¶102).  Also, attending the high school would not require Doe 1 to come into contact with the monument.  The monument is located in a poorly lit area, partially obscured by shrubs, and is fifteen feet from a

31

pathway that leads to an entrance that is not the main student entrance.  (Complaint, Exhibits 1 and 2; A.7; A.27; A.51)  At the time of day that students enter the school building during the school year, it is dark and the monument would not be visible.  (A.61 at p. 111) Doe 1 herself testified that she has walked past the monument on many occasions and never paid any attention to it.  (A.67-A.68)

91.     Plaintiff Doe 1 presently attends school in a different school system. (Pl. Ex. QQ, ¶ 22).

DEFENDANT'S RESPONSE: Admitted.

92.     As a result of Plaintiff Doe 1's withdrawal from the NKASD, Plaintiff Doe 1 has different classmates than Doe 1 had last year, and Doe 1 cannot take a school bus to Doe 1's new school from Plaintiff Schaub's residence. (Pl. Ex. QQ, ¶¶ 25-26).

DEFENDANT'S RESPONSE: Immaterial.

93.     [REDACTED]. (Pl. Ex. QQ, ¶¶ 10, 15, 21, 23).

DEFENDANT'S RESPONSE: [REDACTED].

94.     [REDACTED]. (Pl. Ex. QQ, ¶ 21).

DEFENDANT'S RESPONSE: Denied.  [REDACTED].  (A.93; A.94; Plaintiffs' Concise Statement, ¶102)  Also, attending the high school would not require Doe 1 to come into contact with the monument.  The monument is located in a poorly lit area, partially obscured by shrubs, and is fifteen feet from a pathway that leads to an entrance that is not the main student entrance. (Complaint, Exhibits 1 and 2; A.7; A.27; A.51)  At the time of day that students enter the school building during the school year, it is dark and the monument would not be visible.  (A.61 at p. 111) Doe 1 herself testified that she has walked past the monument on many occasions and never paid any attention to it.  (A.67-A.68)

95.     [REDACTED]. (Pl. Ex. QQ, ¶ 28-29).

DEFENDANT'S RESPONSE: Immaterial.

96.     [REDACTED]. (Pl. Ex. QQ, ¶¶ 30-34).

DEFENDANT'S RESPONSE: Denied.  [REDACTED].  (A.93; A.94; Plaintiffs' Concise

Statement, ¶102)  Also, attending the high school would not require Doe 1 to come into contact

with the monument.  The monument is located in a poorly lit area, partially obscured by shrubs,

and is fifteen feet from a pathway that leads to an entrance that is not the main student entrance.

(Complaint, Exhibits 1 and 2; A.7; A.27; A.51)  At the time of day that students enter the school

building during the school year, it is dark and the monument would not be visible.  (A.61 at p.

111) Doe 1 herself testified that she has walked past the monument on many occasions and never

paid any attention to it.  (A.67-A.68)

97.     Valley High School is the most convenient high school for Doe 1 to attend. (Pl.

QQ, ¶ 17).

DEFENDANT'S RESPONSE: Denied as NKASD has no knowledge of what Plaintiffs'

mean by the phrase "most convenient."

98.     Plaintiff Doe 1 used the swimming pool at Valley High School from third to fifth

grade with her daycare program. (Pl. Ex. RR, Deposition of Doe 1, 10).

DEFENDANT'S RESPONSE: Admitted.

99.     Plaintiff Doe 1 also participated in a karate event at the school. (Pl. Ex. RR, 10).

DEFENDANT'S RESPONSE: Admitted.

100.    When Plaintiff Doe 1 went to the Valley High School to use the swimming pool

and to participate in the karate event, Doe 1 walked past the Ten Commandments Monument.

(Pl. Ex. RR, 11).

DEFENDANT'S RESPONSE: Admitted.

101. On those occasions, Plaintiff Doe 1 entered the school by walking across the bridge, on the concrete footpaths near the Monument. (Pl. Ex. RR, 18).

DEFENDANT'S RESPONSE: Admitted.

102. Plaintiff Doe 1 visited Valley High School for a dinner dance last year. (Pl. Ex. QQ, ¶ 7).

DEFENDANT'S RESPONSE: Admitted.

103. Plaintiff Doe 1 views the Monument when she goes to a friend's house. (Pl. Ex. RR, 19).

DEFENDANT'S RESPONSE: Admitted.

104. Plaintiff Schaub viewed the Ten Commandments Monument on one or two occasions when she dropped her sister off so that her sister could attend to orientation and/or necessary business pertaining to her child who was a student at the school. (Pl. PP, 31-33).

DEFENDANT'S RESPONSE: Admitted.

105. Plaintiff Schaub viewed the Ten Commandments Monument and utilized the footpaths while at the Valley High School for the karate event that Plaintiff Doe 1 attended. (Pl. QQ).

DEFENDANT'S RESPONSE: Admitted.

106. Plaintiff Schaub is a member of Freedom From Religion Foundation (FFRF). (Pl. Ex. QQ).

DEFENDANT'S RESPONSE: Denied. Schaub never joined the FFRF. To the contrary, she was given a "gift" membership for one year by the co-president of FFRF that will expire in 2015. (A.43-A.44)

107.    After hearing about the FFRF Letter on the news, Plaintiff Schaub contacted staff attorney Patrick Elliot at FFRF for the purpose of obtaining legal advice regarding the potential removal of the Monument (Pl. Ex. PP, 166-168, 171).

DEFENDANT'S RESPONSE: Denied. Schaub did not testify that she contacted FFRF staff attorney Patrick Elliot seeking legal advice.  To the contrary, Schaub testified that, after hearing about the letter that FFRF had sent to NKASD demanding the removal of the monument, Schaub went to the FFRF website and filled out what she described as a complaint form, and then she was contacted by Elliot.  (A.97-A.98; A.45-A.46)

108.    On August 29, 2012, FFRF, Plaintiff Schaub and Plaintiff Doe 1 sent a letter through counsel to interim superintendent Thomas Rocchi and the Board of School Directors of NKASD requesting that the Ten Commandments Monument be removed and threatening the filing of a lawsuit on behalf of FFRF and the Doe Plaintiffs if the District refused to remove the monument (the "Plaintiffs' Letter"). (Pl. Ex. SS, August 29, 2012 letter to Rocchi from Steele Schneider, P6-P9).

DEFENDANT'S RESPONSE: Admitted.

### NKASD Response to Plaintiffs' Letter

109.    The NKASD never discussed the Plaintiffs' Letter or the Complaint in any public Board meeting. (Pl. Ex. A, 14-16).

DEFENDANT'S RESPONSE: Admitted.

110.    The NKASD never held a public discussion or public vote on whether to oppose Plaintiff's Complaint. (*Id.*).

DEFENDANT'S RESPONSE: Admitted.

111.    Prior to the NKASD September 27, 2012 Board meeting, where Robert Pallone indicated to the media the NKASD intended to discuss Plaintiffs' Letter, Robert Pallone said, "My personal position is to fight them all the way, but that will need to be a board decision." (Pl. Ex. WW, P17-P20).

DEFENDANT'S RESPONSE: Admitted.

112.    John Pallone began as Superintendent of the NKASD on October 1, 2012 and Robert Pallone believes the decision to oppose any lawsuit had already been made before the hiring of John Pallone. (Pl. Ex. L, 7, 19; Pl. Ex. M, 96).

DEFENDANT'S RESPONSE: Admitted.

113.    As of October 26, 2012, the District had no plans to remove the Monument. (Pl. Ex. XX, October 26, 2012 Pittsburgh Tribune-Review news article, P103-P104).

DEFENDANT'S RESPONSE: Admitted.

114.    At the October 26, 2012 NKASD Board meeting, the Board voted to appoint counsel. (*Id.*).

DEFENDANT'S RESPONSE: Admitted.

115.    On November 16, 2012, NKASD filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 8).

DEFENDANT'S RESPONSE: Admitted.

**Community Response to NKASD Response to Plaintiffs' Letter**

116.    Plaintiff Schaub monitored the "KEEP THE TEN COMMANDMENTS AT VALLEY HIGH SCHOOL" Facebook group around the time that the Plaintiffs' Letter was sent. (ECF No. 12-6, Plaintiff Schaub Declaration in support of Motion to Proceed Pseudonymously).

DEFENDANT'S RESPONSE: Admitted.

117.    On September 12, 2012, Plaintif Schaub read the group age and saw an individual by the name of Anthony Ferma post, "Tell these asswipe to go to hell and stay in Wisconsin and mind their own effin usiness as to what is on private property." John Zavadek then wrote, "Maybe we should get that lady's phone number who is a participant in the law suit and have everybody call her and give her our opinion." Ferma responded, "I'm sure if we look up the bitch she probably has a facebook account or a facebook page for her ridiculous group and we can slam the shit out of the bitch." (ECF No. 12-7).

DEFENDANT'S RESPONSE: Immaterial.  There is no evidence that the person making the post resides in the NKASD area, attended school at Valley High School, or ever viewed the monument.  The post referred to does not state or imply any religious reason for the post.  That some people were insulted or angered because they perceived that Schaub was acting as the local straw man for an out of state organization trying to tell the community what to do is irrelevant to the issues in the present case.

118.    On September 16, 2012, an individual by the name of Vincent Miller posted: "Have the families involved in the law suit been identified? I cannot believe anyone living in the community would participate in such a worthless cause. Someone needs to send that group back to Wisconsin with several black eyes." (ECF No. 12-8).

DEFENDANT'S RESPONSE: Immaterial.  There is no evidence that the person making the post resides in the NKASD area, attended school at Valley High School, or ever viewed the monument.  The post referred to does not state or imply any religious reason for the post.  That some people were insulted or angered because they perceived that Schaub was acting as the local straw man for an out of state organization trying to tell the community what to do is irrelevant to the issues in the present case.

119.    On October 5, 2012, a letter titled "But out II" was published in the Pittsburgh Tribune-Review which stated that the September 28 letter titled "Butt out, atheists" "said it all and said it very eloquently." The letter went on to say "[h]ere in New Kensington, we neither want nor need you atheists." (Pl. Ex. YY, P162).

DEFENDANT'S RESPONSE: Immaterial.  There is no evidence that the person who wrote the letter ever attended Valley High School or ever viewed the monument.  That some people were angered or insulted by the attempts of an out of state organization to remove a community monument that had been in place for over 55 years is irrelevant to the issues in the present case.

120.    On October 14, 2012, the local media reported that approximately 50 people attended a rally in a local park to support the District's keeping the Ten Commandments Monument, which was called the "Save our Stone" rally. (Pl. Ex. ZZ, P100-P101).

DEFENDANT'S RESPONSE: Immaterial.  That NKASD's decision to keep the monument coincides with the religious beliefs of some people is not relevant to the issues of the present case.  Additionally, most of the people attending the rally expressed non-religious reasons for keeping the monument, such as the monument is "part of our history," and "It was there for 50 years and some kids don't know it's there.  No one is forcing anyone to look at it."

121.    Plaintiff Schaub observed the "Save our Stone" rally. (*Id.*).

DEFENDANT'S RESPONSE: Immaterial.

122.    The organizer of the event stated, "We want to show the school district that the community wants that monument to stay there." (*Id.*).

DEFENDANT'S RESPONSE: Immaterial.

123.    Speaking from the bandstand in the park, the organizer of the event stated, "We don't want it removed—this is part of our country—They'll lock u [sic] the churches and we'll be just like a communist country." (*Id.*).

DEFENDANT'S RESPONSE: Immaterial.  That NKASD's decision to keep the monument coincides with the religious beliefs of some people is not relevant to the issues of the present case.  Additionally, most of the people attending the rally expressed non-religious reasons for keeping the monument, such as the monument is "part of our history," and "It was there for 50 years and some kids don't know it's there.  No one is forcing anyone to look at it."

124.    The news article also mentioned Nickols' effort at gathering petition signatures on a petition to be submitted to the District. At the time of the rally, he had gathered at least 400 signatures. (*Id.*).

DEFENDANT'S RESPONSE: Immaterial.

125.    On January 5, 2013, a letter written by a New Kensington resident titled "Leave us alone" was published in the Pittsburgh Tribune-Review. The letter referenced the December 27, 2012 letter "The Ten Commandments are historical" as expressing the "Leave us alone!" viewpoit. The letter also said that the September 28,2012 letter titled "Butt out, atheists" "is a close second." The letter goes on to say, "I will be counted, by name, in the fight to allow the Ten Commamdents monument to stand outside of Valley High School. The devil and his atheists need to butt out of New Kensington and attempt to cause trouble elsewhere. My 110-pound Doberman will stand with me." (Pl. Ex. AAA, P10-P13).

DEFENDANT'S RESPONSE: Immaterial.  There is no evidence that the person who wrote the letter ever attended Valley High School or ever viewed the monument.  That some people were angered or insulted by the attempts of an out of state organization to remove a

community monument that had been in place for over 55 years is irrelevant to the issues in the present case.  Further, that NKASD's decision to keep the monument coincides with the religious beliefs of some people is not relevant to the issues of the present case.

## ADDITIONAL MATERIAL FACTS

126.    The monument was donated to NKASD by the Fraternal Order of Eagles (hereinafter "FOE") around the time that Valley High School was being constructed.  (A.15-A.16)

127.    The monument was part of a nationwide program that stems from an idea developed by Judge E.J. Ruegemer, who was also chairman of FOE's Youth Guidance Committee.  (A.1 at ¶2)

128.    While a Minnesota juvenile court judge, Judge Ruegemer came in frequent contact with youngsters who were in trouble with the law and who seemed to lack any code of conduct by which to govern their actions.  He believed these troubled youths could benefit from exposure to one of mankind's oldest codes of conduct, the Ten Commandments.  This exposure was not meant "to be a religious instruction of any kind, but to show these youngsters that there were such recognized codes of behavior to guide and help them."  (A.1-A.2 at ¶3)

129.    The monument sits isolated, not by the main student entrance to the school, but on the lawn in the vicinity of a walkway leading to a side entrance.  (A.7)

130.    The area where the FOE monument is located is not well lit.  (A.27; A.51)

131.    The view from one side of the FOE monument is partially obscured by a shrub.  (Complaint, Exhibits 1 and 2)

132.     The closest someone passing along the walkway could get to the FOE monument is about 15 feet.  (A.27)

133.     Given the time that students enter the school building during the school year, it is dark and the monument would not be visible.  (A.61 at p. 111)

134.     Many people did not even notice the monument.  (A.19)

135.     Some who have lived in the area all their lives and passed the FOE monument countless times never paid attention to it or rarely noticed it.  (A.48-A.49; A.73 at ¶3)

136.     Some who have walked past the FOE monument for 50 years never saw or read what was on it and assumed it was a monument to war veterans, or didn't remember that it contained the Ten Commandments.   (A.57 at p. 18; A. 59 at pp. 105-106; A.73 at ¶6)

137.     Those who did, at some point, stop and take the time to look at or read the monument were not offended by it and did not feel that it promoted religion.  (A.77 at ¶¶3,4; A.80 at ¶3; A.76 at ¶3; A.81 at ¶¶3.4; A.74 at ¶3; A.75 at ¶3; A.79 at ¶3)

138.     The FFRF letter dated March 20, 2102, was the first complaint or objection that NKASD ever received regarding the FOE monument in the 55 years that the monument sat on the lawn of the high school.  (A.11; A.52)

139.     Many people had never paid any attention to the monument until news of the FFRF letter reached the local media.  (A.12; A.49; A.57 at p. 18)

140.     Prior to FFRF raising this controversy, there is no record of anyone complaining about the FOE monument or even being aware of anyone raising any complaint about the FOE monument.  (A.77 at ¶5; A.80 at ¶4; A.76 at ¶¶4,5; A.81 at ¶5; A.73 at ¶4; A.74 at ¶4; A.75 at ¶4; A.79 at ¶4)

141.    NKASD's position is that the FOE monument does not endorse religion, has

become part of the front lawn of the high school, and that the FOE monument has historical

significance.  (A.13; A.15; A.53; A.62 at p. 117; A.63 at p. 122; A.64-A.65 at pp. 127-129, 137)

142.    [REDACTED].  (A.99)

143.    [REDACTED].  (A.111)

144.    [REDACTED].  (A.100)


Respectfully submitted,

SANCHEZ LEGAL GROUP, LLC

By:     s/ Anthony G. Sanchez, Esquire
        PA ID#55945
        2403 Sidney Street, Suite 242
        River Park Commons
        Pittsburgh, PA 15203
        (412) 904-3200

        Attorneys for Defendant,
        New Kensington-Arnold School District