IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**FREEDOM FROM RELIGION FOUNDATION, INC.**; **DOE 1**, *by DOE 1's next friend and parent*, **MARIE SCHAUB**, *who also sues on her own behalf*,

          **Plaintiffs,**

v.

**NEW KENSINGTON-ARNOLD SCHOOL DISTRICT,**

          **Defendant.**

2:12-cv-1319

## MEMORANDUM OPINION

Pending before the Court are the cross-motions for summary judgment filed by Defendant, New Kensington-Arnold School District, and Plaintiffs, Freedom from Religion Foundation, Inc. ("FFRF"), Doe 1, and Marie Schaub, who sues as Doe 1's next of friend and on her own behalf. ECF Nos. 58, 62. The motions have been fully briefed, and the factual record has been thoroughly developed via the parties' concise statements of material fact, the responses thereto, and the attached appendices. ECF Nos. 59, 60, 61, 63, 64, 72, 73, 74, 75, 76, 82. Accordingly, the motions are ripe for disposition.

**I.**     **Background**

Since 1957, a monument inscribed with the Ten Commandments has been located on the lawn outside of Valley High School in the New Kensington-Arnold School District. Standing approximately 6 feet tall and weighing upwards of 2,000 pounds, the monument sits on a grassy area between two sidewalks extending from a parking lot to the high school's gymnasium. The inscription on the monument reads:

<pre>
                    The Ten Commandments
                    I AM the LORD thy God.
</pre>

I. Thou shalt have no other gods before me.
II. Thou shalt not take the Name of the Lord thy God in vain.
III. Remember the Sabbath Day, to keep it holy.
IV. Honor thy father and thy mother, that thy days may be long upon the land which the Lord thy God giveth thee.
V. Thou shalt not kill.
VI. Thou shalt not commit adultery.
VII. Thou shalt not steal.
VIII. Thou shalt not bear false witness against thy neighbor.
IX. Thou shalt not covet thy neighbor's house.
X. Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's.

At the top of the monument, there are two tablets inscribed with unreadable Hebrew script surrounded by a floral motif. An all-seeing eye sits between the two tablets, and an eagle grasping the American flag sits immediately below the all-seeing eye. Below the text are the superimposed Greek letters Chi and Rho, two Stars of David, and an inscription indicating that the local chapter of the Fraternal Order of Eagles, a national civic organization, donated the monument. The monument at Valley High School is one of many throughout the country donated by the Eagles or their local chapters in the middle of the last century.

Plaintiff Schaub lives in the School District with her daughter, Doe 1. Schaub is a member of the FFRF, a non-profit corporation dedicated to promoting the separation of church and state and educating the public on non-theism. Schaub identifies as an atheist and objects to the presence of the monument on the high school grounds. Prior to filing this lawsuit, however, she had "only been to the school a handful of times." Schaub Dep. 52:20-21. She viewed the Ten Commandments monument on one or two occasions when dropping off her sister at the high school. (It is not clear when these visits were.) She also viewed the monument when attending a karate event at the high school with Doe 1 in 2007 or 2008. She testified that although she did not stop to read the monument in full, as soon as she saw the line "I am the Lord thy God," her

"stomach turned and [sh]e just kept on walking." *Id.* at 92:12. She elaborated:

> [A]t the time whenever I was attending these events, it didn't even occur to me – I wasn't even educated on the fact that [the Ten Commandments] shouldn't be there. I was just kind of like – you know, I didn't even really realize that it was inappropriate to have it there . . . . I didn't put two and two together that . . . this is a religious monument and it's on public school property. I kind of looked at it out of the corner of my eye, didn't really think too much about it and I just kept on walking.

*Id.* at 95:6-25. According to her affidavit, however, she "view[s] the Ten Commandments monument as 'commanding' that students and visitors worship 'thy God.'" Schaub Aff. ¶ 13. "To [her], the presence of the Ten Commandments monument in front of the school signals that [she is] an outsider because [she] do[es] not follow the particular religion or god that the monument endorses." *Id.* ¶ 14. She also does not want her daughter, Doe 1, to attend a school that, in her view, "endorses religion." *Id.* ¶ 15.

At the time this action commenced, Doe 1 was a middle school student in the School District. Although she has never been a student at the high school, she used the swimming pool there from third to fifth grade with her daycare program, and as already noted she also attended a karate event at the high school with her mother in 2007 or 2008. On these occasions, she walked past the Ten Commandments monument, but she "didn't really pay attention to [it]. [She] was just kind of ignoring it because [she] didn't really care about it." Doe 1's Dep. at 11:8-11. In addition, she testified that although she saw the monument, she "was young so [she] didn't really know what it meant." *Id.* at 19:8-9. From the time of these encounters until the time this lawsuit was initiated, Doe 1 never came in direct contact with the monument again, though she has viewed it while driving to the house of a friend who lives near the high school. When Doe 1 was in eighth grade – *after* this lawsuit was filed – she visited the high school for a dinner dance. Moreover, although Doe 1 was set to begin attending the high school in August 2014, her family

3

decided, during the pendency of this action, to withdraw her from the School District and place her in different school system, allegedly to avoid contact with the monument.

On March 20, 2012, FFRF staff attorney Patrick Elliot sent a letter to then-School Board president George Batterson, requesting that the monument be removed. The School Board refused. After hearing about the letter on the news, Schaub filled out what she described as a "complaint" on FFRF's web site. Elliot subsequently got in touch with her. Thereafter, FFRF, Schaub, and Doe 1, through counsel, sent another letter to the School District's interim superintendent, Thomas Rocchi, and the School Board, threatening legal action if the School District failed to remove the monument. Again, the School District refused.

That being the case, Plaintiffs initiated this action by filing a one-count Complaint against the School District on September 14, 2012,[1] seeking a declaration that the display of the Ten Commandments monument on school grounds violates the Establishment Clause and requesting an injunction directing the School District to remove the monument. The Complaint also seeks nominal damages. On November 16, 2012, the School District filed a motion to dismiss, arguing that the Complaint failed to state a claim upon which relief could be granted. The Court disagreed and denied the School District's motion to dismiss in a Memorandum Opinion and Order dated January 22, 2013.

---

1. In addition to the FFRF, Schaub, and Doe 1, the Plaintiffs originally included Doe 2, a student at Valley High School, and Doe 3, the parent and guardian of Doe 2 and a resident taxpayer in the School District. Doe 2 and Doe 3 are Schaub's relatives and were apparently asked to join the suit because Schaub (or, more likely, her counsel) recognized that she and Doe 1 might lack standing. As Schaub said in a Facebook posting that came out in discovery, "My relative's child [Doe 3] is in the high school now but mine is in the middle school . . . that's why I asked them to join so they couldn't say the case isn't mature." Def.'s Supplemental App.99, ECF No. 80 (sealed). She added, "[E]ven if they said that MY child isn't affected by having my relative who has kid in the high school NOW, they can't stop the suit." *Id.* Doe 2 and Doe 3, however, have since been voluntarily dismissed from this case with prejudice. ECF No. 43.

Following the close of discovery, the parties filed cross-motions for summary judgment. Plaintiffs argue that the display of the Ten Commandments cannot withstand constitutional scrutiny under the "test" from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), or its close analog, the endorsement "test," which was established in more recent Supreme Court cases addressing allegedly unconstitutional religious displays on public property. The School District, on the other hand, contends that Plaintiffs do not even possess standing to challenge the display of the monument because of their limited exposure to the monument prior to the initiation of this lawsuit. Assuming Plaintiffs have standing, the School District goes on to argue that this Court should apply Justice Breyer's approach from his concurrence in *Van Orden v. Perry*, 545 U.S. 677 (2005), and hold that the display of the Ten Commandments monument does not violate the Establishment Clause.

## II. Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To withstand a motion for summary judgment, the nonmoving party must show a genuine dispute of material fact for trial by citing to particular parts of material in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the

5

nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-248.

The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c) (1)(A), or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B). In reviewing all of the record evidence submitted, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

The court is not permitted to weigh evidence or to make credibility determinations at this stage. *Anderson*, 477 U.S. at 255. Those functions are for the jury, not the court. *Id.* The court is thus limited to deciding whether there are any disputed issues and, if so, whether they are both genuine and material. *Id.*

This standard remains the same when the parties have filed cross-motions for summary judgment. *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006). "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id.* (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x. 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing

*Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

## III. Discussion

The Court begins, as it must, with the standing issue. "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies'. . . ." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). As a corollary of the "cases and controversies" requirement, a plaintiff must establish standing in order to bring suit in federal court. *Id.* at 598 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These requirements are examined at the "commencement of the litigation." *Id.* (internal citation and quotation marks omitted). "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *Lujan*, 504 U.S. at 561; *Friends of Earth*, 528 U.S. at 180; *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Furthermore, "[w]hen, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). The threat of future injury must be "real

and immediate," and therefore, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1975)).

The parties' dispute focuses on whether Schaub and Doe 1 have suffered the type of injury required to obtain standing.[2] Relying on a long list of cases from outside the Third Circuit, Plaintiffs argue that they need only demonstrate that Schaub and Doe 1 had "direct, unwelcome contact" with the Ten Commandments monument. The School District disagrees. From its perspective, a plaintiff must alter his or her conduct to avoid an allegedly offensive display in order to suffer the requisite injury. This requirement, the School District argues, is drawn from the Supreme Court's decision in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982).

In *Valley Forge*, the Supreme Court's most significant discussion of the issue to date, the organization-plaintiff and four of its employees (on whose standing the organization's standing was dependent) challenged a conveyance of federally owned land in Pennsylvania to Valley Forge Christian College. *Id.* at 469. The employee-plaintiffs lived in Virginia and Maryland – nowhere near the site of the transferred property – and learned of the conveyance through a news release. *Id.* at 487. The Supreme Court held that the plaintiffs lacked standing because, although they alleged "that the Constitution has been violated," "[t]hey fail[ed] to identify any personal injury . . . other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* at 485. As the Court explained, "[t]hat is not an injury

---

2. FFRF has not alleged an independent injury. Rather, its standing is predicated on Schaub's standing. If Schaub has standing, the organization also has standing. *See ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001) (citations omitted). The Court also notes that Plaintiff Schaub has not argued that she has standing based on her status as a taxpayer.

8

sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Id.* at 485-86.

In reaching that conclusion, the *Valley Forge* Court contrasted the employee-plaintiff's allegations with those it found sufficient to create standing in *Abington School District v. Schempp*, 374 U.S. 203 (1963), a case involving a challenge to a law that required bible reading in public schools. *Valley Forge*, 454 U.S. at 486 n.22. Addressing the plaintiffs' argument that, like the plaintiffs in *Schempp* (public school students and their parents), they possessed standing because they had a "spiritual stake" in First Amendment values, the Court retorted, "[t]he plaintiffs in *Schempp* had standing, not because their complaint rested on the Establishment Clause . . . but because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." *Id.* The plaintiffs in *Valley Forge* lacked standing because they failed to allege a comparable injury. *Id.* The Court made clear, however, that it did not mean to suggest that standing cannot be based "on noneconomic injury." *Id.* at 486 (citations omitted). But in the Court's estimation, the plaintiffs had not "alleged an *injury* of *any* kind, economic or otherwise." To bring the point home, the Court explained:

> Respondents complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and Virginia; their organizational headquarters are located in Washington, D.C. They learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court. The federal courts were simply not constituted as ombudsmen of the general welfare.

*Id.* at 486-87.

The Courts of Appeals have, at times, taken somewhat divergent views about what *Valley Forge* stands for. *See, e.g.*, *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 682 (6th Cir.

9

1994) ("The cases are in some conflict and the doctrine is somewhat confused."). As the School District argues, the Seventh Circuit Court of Appeals has, at least on one occasion, interpreted *Valley Forge* as requiring potential plaintiffs to "alter their behavior" to avoid contact with an allegedly offensive display in order to obtain Article III standing. *See Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467-68 (7th Cir. 1988) (discussing *Valley Forge*, 454 U.S. at 485-87). Every other Court of Appeals that has considered the issue, however, has concluded that proof of direct and unwelcome contact with the allegedly offensive display is all that is required to establish standing. *See, e.g.*, *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015); *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1089 (4th Cir 1997); *Murray v. City of Austin, Tex.*, 947 F.2d 147, 151 (5th Cir. 1991); *Adland v. Russ*, 307 F.3d 471, 478 (6th Cir. 2002); *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023-24 (8th Cir. 2012); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1253 (9th Cir. 2007); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir. 1989); *Saladin v. City of Milledgeville*, 812 F.2d 687, 692-93 (11th Cir. 1987).

Even the Seventh Circuit Court of Appeals has since partially retreated from its reasoning in *Zielke*, finding standing in subsequent cases where plaintiffs were forced to come "into direct and unwelcome contact" with a display "to participate in their local government and fulfill their legal obligations." *Doe v. Cnty. of Montgomery, Ill.*, 41 F.3d 1156, 1161 (7th Cir. 1994); *see also Books v. City of Elkhart, Ind.*, 235 F.3d 292, 301 (7th Cir. 2000) ("*Books I*") (following *Doe* and "conclud[ing] that a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located"); *Books v. City of Elkhart*, 401 F.3d 857, 861 (7th Cir. 2005) ("*Books II*") (explaining that "changes in behavior" to avoid an allegedly

10

unlawful display are sufficient, but not required, to confer standing).[3]

Our Court of Appeals has not come down on either side of this debate. It did, however, survey both sides of the argument in *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 265-66 (3d Cir. 2001). That case initially involved a challenge to a holiday display at the township's municipal building in 1998, but it was eventually expanded to include a challenge to the 1999 holiday display, as well. *Id.* at 260-61. There was "substantial evidence" in the record regarding the plaintiff's contact with the 1998 display: they frequently visited the municipal building for personal, professional, and political responsibilities; and both plaintiffs saw the display and found it offensive. *Id.* at 264. "Before the [plaintiffs'] suit was expanded to include the 1999 display, the District Court found that this evidence sufficiently established [their] standing to raise their constitutional claims." *Id.* at 265.

On appeal, then-Circuit Judge and now-Supreme Court Justice Alito, writing for the panel, called it a close question whether the plaintiffs had standing to challenge the 1998 display. *Id.* On the one hand, their alleged injuries – resentment and feelings of being less welcome and

---

3. Whether a plaintiff has to alter his conduct to obtain standing remains a bit unsettled in the Seventh Circuit, despite the seemingly clear pronouncements in *Doe* and *Books I* and *II* that there is no such requirement. Dissenting in *Books II*, Judge Easterbrook argued that the court's cases since *Zielke*, particularly *Books I*, had reduced *Valley Forge* to a "hollow shell" and urged his colleagues to overrule them. 401 F.3d at 870-71 (Easterbrook, J., dissenting). Six years later, his view seemed to win the day, as the Seventh Circuit refused to find standing in a case challenging the President's annual prayer proclamation since the plaintiffs did not "alter[] their conduct one whit or incur[] any cost in time or money." *Freedom from Religion Found., Inc. v. Obama*, 641 F.3d 803, 808 (7th Cir. 2011). Judge Easterbrook, writing for the panel, did not, however, purport to overrule the Seventh Circuit's prior decisions that found standing in cases involving direct, unwelcome contact with an offensive display. *Id.* at 807-08 ("Eventually we may need to revisit the subject of observers' standing in order to reconcile this circuit's decisions [with *Valley Forge*], but today is not the time."). Subsequently, another panel of the Seventh Circuit reiterated that "being exposed to religious symbols can constitute a direct harm" for the purpose of establishing standing. *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 820 (7th Cir. 2013). As a result, it is not totally clear what the rule is in the Seventh Circuit at this moment in time .

accepted in the community – could be likened to type of "'psychological consequence[s]'" that the Supreme Court found insufficient to establish standing in *Valley Forge*. *Wall*, 246 F.3d at 265 (quoting *Valley Forge*, 454 U.S. at 485-86). On the other hand, the Court of Appeals acknowledged that "[d]ecisions of others circuits . . . suggest that the [plaintiffs'] evidence might be sufficient . . . because unlike the named plaintiffs in *Valley Forge*, [they] had personal contact with the display." *Id.* (citing *Foremaster*, 882 F.2d at 1490-91; *Saladin*, 812 F.2d at 692-93). Ultimately, however, the Court of Appeals did not decide whether the plaintiffs' contact with 1998 display was sufficient because they had dropped their challenge to that display on appeal. *Id.* at 266. Rather, the plaintiffs only preserved their challenge to the 1999 display, and the Court of Appeals held that the evidence was clearly not sufficient to establish standing with respect to that display "under the law of any circuit." *Id.* For one thing, the Court of Appeals explained, there was no evidence that one of the plaintiffs had ever seen the 1999 display and, although the other plaintiff had observed the display, it was not clear whether he did so for the purpose of the litigation or "in the course of satisfying a civic duty at the municipal building." *Id.* For another thing, there was no evidence of the plaintiffs' reaction to the 1999 display, which differed from the prior year's display. *Id.* "While [the Court of Appeals] assume[d] that the [plaintiffs] disagreed with the 1999 display for some reason," it was not willing to "assume that [they] suffered the type of injury that would confer standing." *Id.*

Two years later, the Third Circuit Court of Appeals touched on the issue of standing again when it affirmed, without much discussion, a district court's finding that a plaintiff could challenge the display of a Ten Commandments plaque in the Chester County courthouse. *See Freethought Soc'y v. Chester Cnty.*, 334 F.3d 247, 255 n.3 (3d Cir. 2003). As the district court had explained in its decision, which was cited approvingly by the Court of Appeals, the plaintiff,

an avowed atheist, frequently visited the courthouse (for example, to obtain a dog license, to serve as a juror, and to attend political rallies) and found the Ten Commandments display "unwelcome every time she passe[d] it by," so much so that she often took "steps to avoid seeing it." *Freethought Soc'y v. Chester Cnty.*, 191 F. Supp. 2d 589, 593 (E.D. Pa. 2002). Relying on the Seventh Circuit's decision in *Books I*, 235 F.3d at 300-01, the district court found those facts sufficient to confer standing. *Id.* As further support for its conclusion, the district court noted that the Court of Appeals in *Wall* "cited and quoted, without criticism, other circuit authority finding standing where a plaintiff had 'direct, personal contact' with an offending religious display." *Id.* (quoting *Wall*, 246 F.3d at 266).

Having canvassed the case law, this Court finds it is safe to conclude that the Third Circuit Court of Appeals would join every other Court of Appeals in adopting the "direct, unwelcome contact" standard. Be that as it may, even under this lower threshold, the Court cannot agree that Plaintiffs Schaub and Doe 1 have adduced sufficient evidence that they have been injured by the presence of the monument on the high school's lawn.

A comparison between the facts here and the facts in some of the cases from other circuits where courts have found standing confirms this conclusion. All of the cases in which standing has been found involved "persons who are obliged to view religious displays in order to access public services, or reach their jobs," or the like. *Obama*, 641 F.3d at 807. In other words, the contact was "frequent and regular, not sporadic and remote." *Vasquez*, 487 F.3d at 1252. In *Doe*, for example, the Seventh Circuit found standing where two of the plaintiffs had to use the courthouse in which the Ten Commandments were displayed "to fully participate as citizens . . . and to fulfill certain legal obligations." 41 F.3d at 1158. They had been called to jury duty in the courthouse, compelled to participate in civil and criminal cases, registered to vote and obtained

absentee ballots, and were required to enter the courthouse to visit various government offices and to attend county board meetings. *Id.* In *Foremaster*, which involved a challenge to a city logo that depicted a Mormon temple, the plaintiff had standing because he was directly confronted with the logo "on a daily basis, given the city's display of the logo on many of its vehicles, its stationary and within and nearby City Hall." 882 F.2d at 1491. Likewise, in *Vasquez*, the Ninth Circuit found standing where the plaintiff was forced to come into daily contact with the allegedly offensive city seal. 487 F.3d at 1249-50. And in *ACLU v. Ashbrook*, the ACLU had standing through one of its members, a lawyer whose practice required him to practice in a courtroom where a Ten Commandments display was located. 375 F.3d 484, 489-90 (6th Cir. 2004). Finally, in *Suhre*, the plaintiff, who became "filled with revulsion" each time he saw a Ten Commandments display on a courtroom wall, was found to have standing because he had been involved in several civil and criminal cases, attended at least four public meetings in the courtroom, and also intended to return to the courthouse in the future. 131 F.3d at 1085.

Plaintiffs Schaub and Doe 1, by contrast, have failed to establish that they were forced to come into "direct, regular, and unwelcome contact with the" Ten Commandments monument on the grounds of Valley High School. *Felix v. City of Bloomfield*, 36 F. Supp. 3d 1233, 1239-40 (D.N.M. 2014). If *Wall* was a close question, then this case is far from it.

Schaub's contacts with the monument were superficial, at best. By her own tally, she has only been to the high school a "handful of times," Schaub Dep. 52:20-21, and she could only recount, at most, three occasions when she allegedly observed the monument: one or two times when she dropped her sister off at the school and, it must be noted, did not even exit her car; and another time in 2007 or 2008 when she attended Doe 1's karate event, walked past the monument, and only read the first line of the inscription. This type of "sporadic and remote"

contact is not sufficient to establish standing. *See Vasquez*, 487 F.3d at 1252. There are no allegations, let alone evidence, that she was required to go to the high school for any reason as part of her regular routine or to take care of necessary matters (or, as will be discussed later, that will require her to do so in the future).

In addition, although Schaub testified that her "stomach turned" whenever she saw the monument in 2007 or 2008 at the karate event, she also testified that "it never occur[ed] to [her]" that the monument might have been inappropriately placed on school grounds. Schaub Dep. 92:12. Instead, she said, "[she] kind of looked at it out of the corner of [her] eye, didn't really think too much about it and [she] just kept on walking." *Id.* 95:24-25. The offense caused by her encounters with the monument seems to have manifested itself only after FFRF became involved in this dispute by asking the School District to remove the monument in March 2012. In the Court's view, this delayed reaction undermines Schaub's claim to standing. Regardless of how she might feel now, if she did not feel that way when she actually encountered the monument, then she is no different from someone who has never come in contact with the monument but who has an abstract, generalized objection to its presence on school grounds. Having such an objection does not give an individual standing to sue, however. In sum, Schaub lacks standing, and as a result, so too does the Freedom from Religion Foundation. *See Wall*, 246 F.3d at 261-62 (citations omitted).

Doe 1's alleged injury is even more tenuous. First and foremost, she has never been a student at the high school. This clearly distinguishes her from the school children in *Schempp*, who were confronted with Bible readings and prayers in their own classrooms on a daily basis. 374 U.S. at 224 n.9. Furthermore, although Doe 1 presumably walked past the monument whenever she used the high school pool while she was in elementary school, she does not appear

15

to have any specific recollection of her encounters with the monument during this period. She also observed the monument when she visited the school for the karate event. However, her deposition testimony indicates that she failed to pay any particular attention to the monument. Nor did she have any particular feelings at the times she saw the monument, let alone that it was an affront to her religious (or non-religious) sensibilities. As she testified, at the times she saw the monument, she "was young so [she] didn't really know what it meant." Doe 1's Dep. at 19:8-9. Doe 1 was thus not just a complete bystander, but an *un*concerned one at that. *Cf. Freethought Soc'y*, 191 F. Supp. 2d at 593 (noting that the plaintiff found the Ten Commandments display "unwelcome every time she passe[d] it by"). As a consequence, she, like her mother, lacks standing. The fact that she can see the monument from the road while driving to a friend's house does nothing to change that, as that contact is far too remote to add anything to the equation. Otherwise, anyone taking issue with the monument would be able to obtain standing simply by driving by. That cannot be the case in light of the holding in *Valley Forge*.

Plaintiffs also argue that irrespective of whether they have standing based on their alleged direct contact with the monument, they surely have standing based on the decision to remove Doe 1 from the School District and place her in a different school system. The shortfall with this argument, however, is that "a plaintiff must establish standing *at the time suit is filed* and cannot manufacture standing afterwards." *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009) (citations omitted) (emphasis added). At the time this suit was filed, Plaintiff was still a student in the School District, albeit one who, by virtue of the fact that she was still in middle school, had limited contact with the high school where the monument was located. The decision to move Doe 1 to a different school was not made until well after this suit was initiated in September 2012. That decision is therefore irrelevant to the determination of whether standing

existed at the time of the filing of the lawsuit. The same goes for Doe 1's alleged contact with the monument at the eighth grade dinner dance in 2014 and the decision not to attend the vocational school orientation at a building near the high school in November 2014. "It is not enough for [Plaintiffs] to attempt to satisfy the requirements of standing as the case progresses. The requirements of standing must be satisfied from the outset and in this case, they were not."[4] *Perry v. Vill. of Arlington Heights.*, 186 F.3d 826, 830 (7th Cir. 1999).

The decision to remove Doe 1 from the School District raises another issue that has gone unaddressed by the parties. As already mentioned, in order to have standing to seek injunctive relief, a plaintiff must demonstrate a real threat of future injury. *See McNair*, 672 F.3d at 223. The decision to remove Doe 1 from the School District completely undermines any possible claim of future injury. While it would have been reasonable to infer that Plaintiffs would be forced to come into regular contact with the monument had Doe 1 remained in the School District and started attending classes at the high school in August 2014, removing her from School District eliminated the reasonable expectation of that occurring. There is also no other evidence that either Schaub or Doe 1 intend to attend events at the high school in the future or will otherwise be required to be visit the high school as part of their ordinary routines.

Contrast this with the situation in *Suhre*, 131 F.3d at 1090-91. There, the Fourth Circuit Court of Appeals found that the plaintiff had standing to seek injunctive relief since there was "evidence of repeated unwelcome exposure to the Ten Commandments display" at issue. *Id.* at 1091. The plaintiff's "past experience," the Fourth Circuit explained, "bears on the likelihood of future injury," making it more likely that he would encounter the display in the future. *Id.* Not only that, but the plaintiff had also "stated an unmistakable intention to participate in future

---

4. The Court notes that Plaintiffs have not come forward with any evidence that either of them altered their conduct in any manner to avoid the monument *prior to* bringing suit.

judicial and municipal business at the courthouse when the occasion arises," which would again bring him in contact with the display. *Id.* This, together with his past exposure to the display, convinced the court that the plaintiff had standing. *Id.*

Comparable evidence does not exist here. On this record, the Court would be forced to assume that Plaintiffs might someday return to the high school, but "[m]ere assumption . . . cannot satisfy [a plaintiff's] burden to prove standing." *Wall*, 246 F.3d at 266. Thus, irrespective of whether Plaintiffs could establish standing to sue for nominal damages based on past injuries (they cannot), they clearly have not demonstrated a likelihood of future injury to permit them to seek an injunction directing the School District to remove the monument. In essence, Plaintiffs' claim for injunctive relief has become moot because of the decision to remove Doe 1 from the School District. *Cf. Suhre*, 131 F.3d at 1089 (recognizing that requiring "plaintiffs [to] take steps to cure their own injury would create mootness problems in many an Establishment Clause case"); *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 681 (6th Cir. 1994) (finding that student's challenge to display of a portrait of Jesus Christ in school was not moot since he "still visits the school and will confront the portrait whenever he is in the hall").

Because Plaintiffs lack standing, the Court's inquiry is concluded. The Court lacks subject matter jurisdiction to address the merits of Plaintiffs' claims, and this action must be dismissed. *See Wall*, 246 F.3d at 261.

### IV. Conclusion

For the reasons hereinabove set forth, the School District's motion for summary judgment will be **GRANTED**, Plaintiffs' motion for summary judgment will be **DENIED**, and this case will be **DISMISSED** for lack of Article III standing. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.**; **DOE 1**, *by DOE 1's next friend and parent*, **MARIE SCHAUB**, *who also sues on her own behalf*, <br><br> Plaintiffs, <br><br> v. <br><br> **NEW KENSINGTON-ARNOLD SCHOOL DISTRICT,** <br><br> Defendant. | 2:12-cv-1319 |

## ORDER OF COURT

**AND NOW**, this 27th day of July, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION FOR SUMMARY JUDGMENT (ECF No. 58) filed by Defendant, New Kensington-Arnold School District, is **GRANTED**, and the MOTION FOR SUMMARY JUDGMENT (ECF No. 62) filed by Plaintiffs, Freedom from Religion Foundation, Inc., Doe 1, by Doe 1's next friend and parent, Marie Schaub, who also sues on her own behalf, is **DENIED**. It is **FURTHER ORDERED** that this case is **DISMISSED** for lack of Article III standing. Accordingly, the Clerk shall docket this case as **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:  Marcus B. Schneider, Esq.
     Email: marcschneider@steeleschneider.com
     Alex J. Barker, Esq.
     Email: alexbarker@steeleschneider.com
     Anthony G. Sanchez, Esq.
     Email: asanchez@sanchezlegalgroup.com